112 Ill. App.3d 851 (1983)
445 N.E.2d 948
KENNETH L. KOCHES, Plaintiff-Appellant,
v.
CHICAGO & ILLINOIS MIDLAND RAILWAY COMPANY, Defendant-Appellee.
No. 82-234.
Illinois Appellate Court  Fifth District.
Opinion filed February 17, 1983.
*852 Miley, Meyer, Austin & Spears, P.C., of Taylorville (Daniel W. Austin, of counsel), for appellant.
Graham & Graham, of Springfield (Charles E. Holt, of counsel), for appellee.
Reversed and remanded.
PRESIDING JUSTICE HARRISON delivered the opinion of the court:
Plaintiff Kenneth L. Koches appeals from the granting of defendant's motion for summary judgment. Defendant Chicago & Illinois Midland Railway Co. moved for a summary judgment of a two-count complaint brought by Koches for personal injury and property damage incurred when his motorcycle struck barricades in front of a large excavation at the intersection of the paved highway and the railroad. The trial court granted the motion and plaintiff appeals. We reverse, holding that defendant was not entitled to summary judgment as a matter of law.
A letter attached as exhibit to defendant's motion for summary *853 judgment showed that during the spring of 1980 grade crossing improvements were being made at the intersection of defendant's railroad track and Business Route 48 West in Taylorville, Illinois, at the request of the Department of Transportation (DOT), in conjunction with a statewide DOT program to standardize railroad grade crossings and provide for the installation of advance warning signs and pavement markings. The program was authorized by the Illinois Commerce Commission (ICC). Defendant submitted two affidavits which confirmed the fact that Chicago & Illinois Midland Railway was making repairs in compliance with the DOT's request. A copy of the ICC order of authorization was also attached. One affidavit further stated that the defendant preferred to make the necessary improvements itself, "to insure that the quality of the roadbed and crossing was maintained rather than permit unknown workers to perform the work and risk damage to our roadbed and crossing," and so it petitioned the ICC for permission to perform the work required by the Department of Transportation. Defendant supplied a copy of this petition and a copy of the ICC resolution granting it. Once permission was obtained, the defendant and the DOT executed an agreement allocating the scope of responsibility for the project between them. This agreement was included in defendant's exhibits. Defendant began repairs in April of 1980 and presented them for final inspection on November 5. A letter from DOT verifying the inspection and approval was a part of the record under consideration. The defendant also submitted ICC General Order No. 138 which governs "construction, maintenance, marking and protection of crossings of Highways and Railroads * * *."
 1, 2 Mr. Koches' accident occurred on August 13, 1980, at 10:54 p.m. While riding his motorcycle, he collided with two barricades immediately in front of a pit eight feet deep and 10 feet wide. The pit covered the entire road surface where the railroad crossing had been. Koches was thrown through the air, striking the ground and suffering serious physical injuries. His motorcycle was destroyed. It is undisputed that no advance warning signs or lights existed to alert motorists of the impending danger.
Section 57 of the Civil Practice Act provides for summary judgment when:
"the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1979, ch. 110, par. 57.)
On appeal plaintiff argues that the court erred in holding that defendant *854 was entitled to judgment as a matter of law. He insists that the defendant railroad owed him a duty to warn of excavations being performed by its employees. He bases this in part on principles of common law negligence and wilful and wanton misconduct but relies primarily on section 4 of the road construction injuries act, which provides:
"Any portion of highway or bridge which is closed to all traffic shall be marked at each place where vehicles have accessible approach to such portion of highway or bridge, and at a sufficient distance from the closed portion of such highway or bridge shall be marked with an adequate number of safe, suitable, and proper warning signs, signals or barricades as set forth in the Manual of Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation so as to give warning to approaching motorists that such portion of bridge or highway is closed and unsafe for travel." (Ill. Rev. Stat. 1979, ch. 121, par. 314.4.)
And on section 6, which provides:
"Any contractor, subcontractor, or his authorized agent or driver of any motor vehicle who knowingly or wilfully violates any provision of this Act, shall be responsible for any injury to person or property occasioned by such violation, and a right of action shall accrue to any person injured for any damages sustained thereby; * * *." Ill. Rev. Stat. 1979, ch. 121, par. 314.6.
Defendant answers by citing a different provision of that chapter, section 9-112 of the Illinois Highway Code, declaring that it is specific and thus controls over the more general provisions of the road construction injuries act. That section states that:
"No person shall place, or cause to be placed, any sign or signal on a public highway within a distance of 300 feet of any grade crossing, except official traffic control devices authorized in an Act in relation to the regulation of traffic, approved July 9, 1935, as now or hereafter amended, any signs or signals required by law or the Illinois Commerce Commission for the protection of such crossings." (Ill. Rev. Stat. 1979, ch. 121, par. 9-112.)
Defendant maintains that section 9-112 makes it illegal for the railroad to erect warning signs or signals at the crossing. However, the unmistakable purpose of section 9-112 is to prevent the placing of signs and signals which would obstruct the view of oncoming trains, not to prevent railroads or other responsible parties from warning of dangerous conditions which lie immediately in the path of oncoming *855 motorists. In fact, the first paragraph of section 9-112 lists some of the obstructions it prohibits: "unauthorized signs and billboards, brush, and shrubbery," and "all hedges and trees upon the highway" within 300 feet of each side of the crossing. (Ill. Rev. Stat. 1979, ch. 121, par. 9-112.) Obviously, section 9-112 was not intended to cover the present situation.
The road construction injuries act, on the other hand, may apply. The act is a safety statute designed to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois. (Vegich v. McDougal Hartmann Co. (1981), 84 Ill.2d 461, 468, 419 N.E.2d 918.) As a safety statute, it must be given a liberal interpretation in order to effectuate the purpose of the statute and to afford broad protection to those the statute was designed to protect. (Kreke v. Caldwell Engineering Co. (1982), 105 Ill. App.3d 213, 221, 433 N.E.2d 1337.) The purpose and intent of section 4, as set forth in Kreke, is to insure that motorists approaching construction areas or obstructions due to construction are given adequate and sufficient advance warning of those conditions and are alerted that normal traffic flow and normal traffic conditions may have changed. Kreke v. Caldwell Engineering Co. (1982), 105 Ill. App.3d 213, 222.
 3 Since the act could apply, the question then becomes whether a defendant railroad could be considered a "contractor" within the meaning of section 6 of the act. Affidavits submitted by the railroad showed that it did enter into a contract with the DOT to perform repair work at the railroad crossing. Although it is defendant's position that the railroad was merely a property owner cooperating with the directive of the DOT, it could be argued that, once the defendant assumed the duties of construction at the railroad intersection, it became a "contractor" for the purposes of imposition of liability under section 4 and section 6.
To date, the only case defining the term "contractor" for purposes of coverage under the act is Richard v. Illinois Bell Telephone Co. (1978), 66 Ill. App.3d 825, 848, 383 N.E.2d 1242. In Richard, Bell employees had been dispatched to the scene of an accident in response to reports of a downed cable at a construction site. The employees allegedly participated in a decision to drape the cable between two trucks to allow traffic to pass. The cable dislodged, resulting in the injuries to plaintiff. On appeal, plaintiff theorized that Bell became a contractor within the meaning of the road construction injuries act when it took part in the decision to raise the cable. The court rejected that contention. It defined contractor as "a party who enters into a *856 contract with the owner of certain property to perform some type of work thereon." (Richard v. Illinois Bell Telephone Co. (1978), 66 Ill. App.3d 825, 848.) Applying that definition, the court held that Illinois Bell was not a "contractor" within the meaning of section 6 because it did not contract with anyone to do any portion of the work which was being performed at the scene of the accident.
Although the circumstances before us differ markedly from those in Richard, the definition of "contractor" found therein could pertain to this defendant. If so, and if plaintiff can prove other critical facts, defendant could be liable for the injuries incurred by Mr. Koches on August 13, 1980. Note that we have made no determination as to whether defendant actually was a "contractor" under the act. We merely observe that the act could apply and that, in our opinion, the documents and affidavits submitted by defendant do not establish that it was not a contractor and thus do not show that it was relieved of the duty imposed by the act. Because of the foregoing, it is unnecessary to discuss the general allegations of misconduct and violation of common law duty by the railroad. We cannot say as a matter of law that there is no genuine issue of fact regarding count I (negligence) and count II (wilful and wanton misconduct). We hold, therefore, that the defendant Chicago & Illinois Midland Railway Co. was not entitled to judgment as a matter of law.
The order is hereby reversed and the cause remanded for further proceedings.
Reversed and remanded.
KASSERMAN and KARNS, JJ., concur.