WAYNE EGGERS, Plaintiff-Appellant, v. H. W. LOCHNER, INC., Defendant (Peabody Midwest Construction, Inc., Defendant-Appellee).

First District (1st Division)   No. 86—0724

Opinion filed June 22, 1987.

Victor Potysman, of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stephen R. Swofford, Mark M. Christerson, and H. Anne McKee, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

This interlocutory appeal arises out of an action brought by plaintiff, Wayne Eggers, against defendants, H. W. Lochner, Inc. (Lochner), and Peabody Midwest Construction, Inc. (PMC), seeking to recover damages for injuries sustained when the automobile which he was driving collided with a motor vehicle owned by Lochner, parked on the shoulder of Tri-State Tollway I-294. Lochner had been hired by the Illinois Tollway Authority (the Authority) to inspect the work being performed by other contractors hired by the Authority, including PMC. Just prior to the collision, a Lochner employee had parked his vehicle on the shoulder of I-294 and left the vehicle unattended while he inspected the drains and sewers installed by PMC, located 30 to 75 feet east of the shoulder. The trial court granted summary judgment in favor of PMC and plaintiff appeals, contending that: (1) "AN ACT to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois" (the Road Construction Injuries Act or Act) (Ill. Rev. Stat. 1985, ch. 121, par. 314.1 *et seq.*) is applicable to the circumstances at bar; (2) PMC knowingly and wilfully violated the provisions of the Road Construction Injuries Act; and (3) PMC's contractual duty to maintain traffic control devices extended to the circumstances surrounding plaintiff's accident. For the following reasons, we affirm the judgment of the circuit court.

The pleadings set forth the following facts pertinent to this appeal. In his deposition, plaintiff explained that on November 16, 1982, approximately 10:30 a.m., he was approaching the toll booth at the Touhy Avenue Toll Plaza, travelling in the extreme right-hand lane, when a vehicle cut in front of him and slammed on its brakes. In an effort to avoid colliding with the vehicle in front of him and to avoid being hit by the vehicle behind him, plaintiff turned onto the shoulder. Within seconds of turning onto the shoulder, plaintiff hit the rear end of the parked Lochner vehicle. Plaintiff stated that

between the point at which he could see the tollgate (approximately 2 miles away) and the tollgate itself, he did not see any construction on either the pavement or the shoulder. Further, all lanes of traffic as well as the right-hand shoulder were open and unobstructed for at least one to two miles before the impact.

On April 29, 1983, plaintiff filed a two-count negligence action solely against Lochner, alleging that Lochner's act of parking its unattended vehicle on the shoulder of the tollway breached its duty to keep a proper lookout; violated various statutory provisions; and created a hazard on the highway. On July 25, 1984, plaintiff added PMC as a party-defendant, alleging that PMC had violated the Road Construction Injuries Act. PMC moved for summary judgment on the grounds that there was no genuine issue or question of material fact that: (1) PMC did not have any construction equipment, construction vehicles, or any vehicles parked on the northbound shoulder or any part of I-294 in the vicinity of the accident site on the date of the accident; and (2) PMC did not in any way obstruct, interrupt, or close off any portion of the normal flow of two-way traffic on I-294 in the vicinity of the accident site on the date of the accident. On February 16, 1986, the trial court granted PMC's motion with prejudice. Thereafter, on March 17, 1986, the trial court granted plaintiff's emergency motion to amend his complaint to add a count sounding in negligence against PMC. Plaintiff's timely appeal of the February 16, 1986, order followed. The negligence counts against Lochner and PMC remain pending below.

■ On appeal, plaintiff first contends that the Road Construction Injuries Act is applicable to the circumstances at bar. It is well-established that the purpose of the Road Construction Injuries Act is to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois. (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918; *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 448 N.E.2d 188.) Section 1 of the Act states:

> "All construction work upon bridges or highways within the State of Illinois shall be so performed and conducted that two-way traffic will be maintained when such is safe and practical, and when not safe and practical, or when any portion of the highway is obstructed, one-way traffic shall be maintained, unless the authorized agency in charge of said construction directs the road be closed to all traffic." (Ill. Rev. Stat. 1985, ch. 121, par. 314.1.)

Other sections of the Act require the contractor to provide flagmen

or traffic signals at construction sites where one-way traffic is utilized (Ill. Rev. Stat. 1985, ch. 121, par. 314.2); impose a duty on drivers to obey flagmen (Ill. Rev. Stat. 1985, ch. 121, par. 314.3); require proper signs or barricades when highways or bridges are closed to all traffic (Ill. Rev. Stat. 1985, ch. 121, par. 314.4); and impose liability on contractors, subcontractors or authorized agents for knowingly or wilfully violating the Act (Ill. Rev. Stat. 1985, ch. 121, pars. 314.5, 314.6).

Applicability of the Act to a situation similar to the one at bar, where two-way traffic was maintained and no portion of the highway had been entirely closed, was addressed by this court in *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 448 N.E.2d 188. In *Dodson*, defendant had been hired by the State to improve a bridge located on the eastbound lanes of an interstate highway. During construction, traffic was directed to the north lane of the eastbound lanes by the use of temporary traffic control devices. As a result of the change in traffic flow, it was necessary for defendant to paint a solid white traffic control line in the south lane to divide the two-way traffic. The temporary traffic control line merged with the original center line approximately 100 feet west of the bridge. Barricades and a temporary guard rail were also erected.

Before the completion of construction on the bridge, a tractor-trailer collided with a portion of the guard rail, tearing out a large segment of it and leaving the bridge abutment unprotected. When construction was completed, the temporary guardrail and barricades were removed. However, because removal of the white traffic control line had proven difficult in the past, defendant decided to let it wear away by traffic. When it did not wear away as anticipated, defendant attempted to cover the line with a black liquid. This did not work either. The following month, in the early evening, plaintiff passenger was riding in an automobile driven by his friend, heading toward the bridge. Both plaintiff and his friend had been drinking and smoking marijuana. As they approached the bridge, plaintiff saw the white traffic control line and mentioned it to his friend. When his friend cut sharply to the left to conform with the traffic control line, the rear of the car slid and the car struck the unprotected abutment. Both plaintiff and the driver were seriously injured.

Following a jury trial, plaintiff appealed the jury's verdict in favor of defendant on the Road Construction Injuries Act count, alleging that the verdict was against the manifest weight of the evidence. Rather than rule on the manifest weight issue, the *Dodson*

court ruled on the applicability of the Act. Although the court acknowledged that as a safety statute, the Act was to be liberally construed, it held that the Act applies only to "the unusually dangerous situation where a highway is closed altogether [citation], or there is only one lane of traffic for use by vehicles traveling in opposite directions." 113 Ill. App. 3d 1063, 1067.

Relying on *Dodson*, the court in *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358, affirmed summary judgment in favor of defendant on a Road Construction Injuries Act count. In *Filipetto*, plaintiff, a minor, was injured when his bicycle collided with a trailer connected to an air compressor which was parked, unattended, in a curb lane. As in *Dodson*, the road was not closed and all lanes of traffic were in use.

In the present case, plaintiff attempts to distinguish his situation from *Dodson* and *Filipetto* and bring it within the purview of the Act by contending that the parked Lochner vehicle constituted a closure of the highway pursuant to section 4 of the Act. Section 4 states, in pertinent part:

> "Any portion of highway or bridge which is closed to all traffic shall be marked at each place where vehicles have accessible approach to such portion of highway or bridge, and at a sufficient distance from the closed portion of such highway or bridge shall be marked with an adequate number of safe, suitable, and proper warning signs, signals or barricades *** so as to give warning to approaching motorists that such portion of bridge or highway is closed and unsafe for travel." Ill. Rev. Stat. 1985, ch. 121, par. 314.4.

■ In his attempt to equate a parked vehicle with a closed highway, plaintiff cites to various statutory definitions, none of which are applicable to the Act at issue. The definitions cited from the Illinois Highway Code (Ill. Rev. Stat. 1985, ch. 121, par. 1—101 *et seq.*) are expressly confined to that code pursuant to section 2—201 therein. Similarly, the definitions found in "AN ACT in relation to the construction, operation, regulation and maintenance of a system of toll highways ***" (Ill. Rev. Stat. 1985, ch. 121, par. 314a26 *et seq.*) are expressly confined to that act pursuant to section 2 therein. In addition, plaintiff argues that definitions from the Illinois Tollway Traffic Control Manual apply because the manual has been made a part of the contract entered into between PMC and the State. We find this argument unpersuasive.

Plaintiff also cites to *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918, and *Koches v. Chicago & Illinois*

*Midland Ry. Co.* (1983), 112 Ill. App. 3d 851, 445 N.E.2d 948, as further support for his proposition that the parked vehicle constituted a closure within the Act. We find these cases unpersuasive in that neither court addressed the issue at bar and both cases are factually distinguishable. In *Vegich*, plaintiff passenger was riding in a car that smashed into a flatbed trailer which had been parked on a section of highway closed for repairs. The highway was being converted into a four-lane divided highway. The northbound lanes had been completed and were open to two-way traffic but the southbound lanes were still under construction and were closed to traffic. The driver of the car had been drinking for several hours immediately before the accident. The issue before the supreme court was whether the legislature had intended that the defense of contributory negligence be permissible in an action brought under the Road Construction Injuries Act.

In *Koches*, plaintiff was injured when his motorcycle struck barricades in front of an 8- by 10-foot excavated pit which covered the entire road surface where the railroad crossing had been. It was undisputed that no advance warning signs or lights existed to alert motorists of the impending danger. The *Koches* court reversed the trial court's order granting summary judgment on the ground that whether the term "contractor" as used in the Act applies to a railroad is a material question of fact.

■ As previously mentioned, in neither *Vegich* nor *Koches* was the term "closure" at issue. Further, in *Vegich*, the entire southbound lane was completely closed, and, in *Koches*, the excavated pit covered the entire surface of the road. Thus, contrary to plaintiff's contention, the road conditions present in *Vegich* and *Koches* render those decisions consistent with the restrictions on the Act's coverage set forth in the later cases, *Dodson* and *Filipetto*. Accordingly, based on the facts that no work was being done on the roadway when the accident occurred, no lanes of traffic were closed, and the normal flow of traffic had not been interrupted, we agree with the circuit court that the Road Construction Injuries Act is not applicable to PMC and summary judgment was properly entered. Our conclusion that the Act is not applicable to PMC obviates the need to address plaintiff's contention that PMC knowingly and wilfully violated the provisions of the Act.

■ Finally, plaintiff maintains that PMC's contractual duty to maintain traffic control devices extended to the circumstances surrounding plaintiff's accident. In presenting this argument, plaintiff admits that PMC's contract to provide construction services was en-

tered into with the Illinois State Toll Highway Authority. Pursuant to the record, the contract specifically states that PMC is an independent contractor. Despite this clear relationship between the parties, plaintiff attempts to place responsibility for Lochner's acts on PMC based on the contractual provision that PMC was to maintain traffic.

This argument fails for several reasons. First, as stated, there is no agency relationship between PMC and Lochner. Both are independent contractors who contracted individually with the State. Second, there is no evidence that PMC was engaged in construction activities at the time of the accident. Third, section s.p. 114 of PMC's contract states that PMC is "responsible for performing all work in a safe and timely manner" and that the presence of outside supervisory or inspection personnel does not relieve PMC "of full liability and responsibility for his work with the safe and proper performance thereof." In other words, PMC is liable for its own work. There is no provision for indemnification of another independent contractor's work. Similarly, the contract entered into between Lochner and the State provides in article IV that:

> "[Lochner] shall be responsible for any and all injuries to persons and damages to property due to the activities of [Lochner], its associates, agents or employees, in connection with such services, and shall be responsible for all parts of its work, both temporary and permanent, relating to the performance of any services under this agreement or in connection therewith."

Thus, the plain language of the contracts belies plaintiff's contention.

For the aforementioned reasons, the judgment of the circuit court is affirmed.

Affirmed.

QUINLAN, P.J., and BUCKLEY, J., concur.