JEFFREY G. ANDREWS, Plaintiff-Appellant, v. MARSHALL'S OF OAK LAWN, ILLINOIS, INC., *et al.*, Defendants-Appellees.

First District (3rd Division) No. 86—0008

Opinion filed July 13, 1988.

FREEMAN, J., dissenting.

Philip H. Corboy, Todd A. Smith, and David A. Novoselsky, all of Chicago, for appellant.

Purcell & Wardrope, Chartered, of Chicago (Sandra Young, Edward C. Purcell, and Paul V. Kaulas, of counsel), for appellees.

JUSTICE RIZZI delivered the opinion of the court:

Plaintiff, Jeffrey Andrews, appeals from an order of the trial court granting summary judgment in favor of defendant, Cecchin Plumbing and Heating, Inc., on count I of plaintiff's amended complaint. In count I, plaintiff alleges that defendant violated "An Act to protect workers and the general public from injury or death during

construction or repair of bridges and highways within the State of Illinois" (Ill. Rev. Stat. 1985, ch. 121, par. 314.1 *et seq.*), commonly referred to as the Road Construction Injuries Act (Act). We affirm.

On October 27, 1978, plaintiff was operating an automobile in a northbound direction on Cicero Avenue in Oak Lawn, Illinois. Cicero Avenue is a six-lane north/south highway, with three lanes of traffic running in each direction. At that time, excavation work was being performed in the easternmost northbound lane of Cicero Avenue just north of 97th Street. Defendant was involved in the excavation work, which consisted of an approximately eight-by-eight-foot hole that had been filled in. Barricades were placed over the excavation area. Due to this work, the easternmost lane of northbound Cicero was partially closed. However, at the site of the excavation, the remaining two northbound lanes of Cicero were totally open to traffic, as were the three southbound lanes. Moreover, the easternmost lane of Cicero was open after the excavation site.

In count I of his amended complaint, plaintiff alleges that he drove his car into the barricades covering the excavation work. According to plaintiff, this caused him to lose control of his car and crash. Plaintiff further alleges that defendant failed to comply with section 4 of the Act (Ill. Rev. Stat. 1985, ch. 121, par. 314.4), and that as a direct and proximate result of defendant's violation of the Act, plaintiff was injured.

Defendant subsequently filed its motion for summary judgment on May 14, 1984. On November 28, 1984, following argument of counsel, defendant's motion was denied. Thereafter, on December 28, 1984, defendant filed a motion for reconsideration of the trial court's order. The hearing on this motion was presided over by another judge. Following this second hearing, the trial court reversed its order of November 28 and entered summary judgment in favor of defendant. Plaintiff then filed a motion for reconsideration. While plaintiff's request was granted, the trial court ultimately determined that the summary judgment entered in defendant's favor on count I of plaintiff's amended complaint was correct.

On appeal, plaintiff argues that the Act is applicable to the circumstances of his case. It is plaintiff's contention that the Act applies to causes of action which occur even where two-way traffic is maintained. We disagree.

■ It is well established that the purpose of the Act is to protect both workmen and the general public from injury or death during the construction or repair of bridges and highways within Illinois. (*Eggers v. H. W. Lochner, Inc.* (1987), 157 Ill. App. 3d 822, 824, 510 N.E.2d

1022, 1024, citing *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918; *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 448 N.E.2d 188.) Section 1 of the Act states:

"All construction work upon bridges or highways within the State of Illinois shall be so performed and conducted that two-way traffic will be maintained when such is safe and practical, and when not safe and practical, or when any portion of the highway is obstructed, one-way traffic shall be maintained, unless the authorized agency in charge of said construction directs the road be closed to all traffic." (Ill. Rev. Stat. 1985, ch. 121, par. 314.1.)

Other sections of the Act state that: (1) a contractor engaged in road construction work is required to furnish flagmen or traffic signals at construction sites where one-way traffic is being utilized (Ill. Rev. Stat. 1985, ch. 121, par. 314.2); (2) the public has a duty to obey flagmen and traffic signals at such construction sites (Ill. Rev. Stat. 1985, ch. 121, par. 314.3); and (3) contractors, subcontractors or authorized agents who knowingly or wilfully violate the Act are liable for such violations (Ill. Rev. Stat. 1985, ch. 121, pars. 314.5, 314.6).

In *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 448 N.E.2d 918, this court addressed a situation similar to the one at issue here. In *Dodson*, the plaintiff was injured when the vehicle he was driving crashed into a bridge abutment. The plaintiff then filed suit against the construction company working on the bridge. In his complaint against the construction company, the plaintiff alleged a violation of the Act. At the time of the plaintiff's injury, two-way traffic was being maintained on the highway. Thereafter, at trial, the jury returned a verdict in the defendants' favor and the plaintiff appealed. 113 Ill. App. 3d at 1065-66, 448 N.E.2d at 190-91.

On appeal, the plaintiff argued that the jury's verdict was against the manifest weight of the evidence. However, rather than ruling on the manifest weight issue, the *Dodson* court based its decision on the applicability of the Act. The court acknowledged that while the Act as a safety statute is to be liberally construed, the plain language of the Act cannot be ignored. The *Dodson* court then determined that the plain language of the Act is "concerned with the unusually dangerous situation where a highway is closed altogether [citation], or there is only one lane of traffic for use by vehicles traveling in opposite directions [citation]." (113 Ill. App. 3d at 1067, 448 N.E.2d at 191.) The court concluded that because two-way traffic was maintained at all times, the statute was inapplicable to the plaintiff's cause of action. *Dodson*, 113 Ill. App. 3d at 1067, 448 N.E.2d at 191.

Thereafter, in *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358, this court relied on *Dodson* and affirmed summary judgment in favor of the defendant on a count alleging a violation of the Act. In *Filipetto*, the plaintiff, a minor, was injured when the bicycle he was riding struck a trailer connected to an air compressor which was parked and left unattended in the curb lane of a four-lane highway. The road was not closed and all of the traffic lanes were in use. 135 Ill. App. 3d at 783, 482 N.E.2d at 359.

█ In the present case, plaintiff attempts to distinguish his situation from *Dodson* and *Filipetto* and bring it within the purview of the Act by contending that the excavation work constituted a closure of the highway within the meaning of section 4 of the Act. Section 4 provides:

"Any portion of highway or bridge which is closed to all traffic shall be marked at each place where vehicles have accessible approach to such portion of highway or bridge, and at a sufficient distance from the closed portion of such highway or bridge shall be marked with an adequate number of safe, suitable, and proper warning signs, signals or barricades as set forth in the Manual of Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation so as to give warning to approaching motorists that such portion of bridge or highway is closed and unsafe for travel." (Ill. Rev. Stat. 1985, ch. 121, par. 314.4.)

Plaintiff cites to *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, 419 N.E.2d 918, and *Koches v. Chicago & Illinois Midland Ry. Co.* (1983), 112 Ill. App. 3d 851, 445 N.E.2d 948, as support for his position. We find plaintiff's argument without merit.

Initially, neither the *Vegich* nor *Koches* decision supports plaintiff's interpretation of the Act. In *Vegich*, the issue before the supreme court was whether the legislature had intended that the defense of contributory negligence be permissible in an action brought under the Act. (*Vegich*, 84 Ill. 2d 461, 419 N.E.2d 918.) With respect to *Koches*, this court reversed the trial court's order granting summary judgment on the ground that whether the term "contractor" in section 6 of the Act (Ill. Rev. Stat. 1985, ch. 121, par. 314.6) applies to a railroad is a question of material fact. (*Koches*, 112 Ill. App. 3d 851, 445 N.E.2d 948.) Moreover, in *Eggers v. H. W. Lochner, Inc.* (1987), 157 Ill. App. 3d 822, 510 N.E.2d 1022, we addressed an issue similar to that raised by plaintiff in the present case.

In *Eggers*, the plaintiff was injured when the automobile he was driving collided with a vehicle defendant had parked on the north-

bound shoulder of Interstate 294 while inspecting construction work completed by contractors hired by the Illinois Tollway Authority. (157 Ill. App. 3d at 823-24, 510 N.E.2d at 1023.) The plaintiff then filed an amended complaint against defendant alleging a violation of the Act. The defendant moved for summary judgment on this issue, and the trial court granted the motion. (*Eggers*, 157 Ill. App. 3d at 823-24, 510 N.E.2d at 1023-24.) On appeal, the plaintiff argued that *Vegich* and *Koches* supported his position that a vehicle parked on the shoulder of the road constituted a *closing* within the meaning of section 4 of the Act. We, however, found no merit to this argument.

On appeal, we determined that "road conditions present in *Vegich* and *Koches* render those decisions consistent with the restrictions on the Act's coverage set forth in the later cases [of] *Dodson* and *Filipetto*." (157 Ill. App. 3d at 827, 510 N.E.2d at 1026.) Based on this analysis, we held that the Act was not applicable to a situation where two-way traffic was being maintained. *Eggers*, 157 Ill. App. 3d at 827, 510 N.E.2d at 1026.

■ As a result, we believe that based on the facts presented here, plaintiff's argument that section 4 of the Act is applicable where two-way traffic is maintained must fail. Were we to accept plaintiff's interpretation of section 4, the Act would apply to almost any accident which could conceivably occur while construction work of any sort was being performed on the highways and bridges of this State. This would be true even if two-way traffic were maintained while the construction work was being done. (*Dodson*, 113 Ill. App. 3d at 1068, 448 N.E.2d at 191-92.) Moreover, because the Act creates a strict liability action for which contributory negligence is not a defense, we believe that the Act should be limited to those unusually dangerous situations which occur when a highway is closed altogether or there is only one lane of traffic available for use by vehicles traveling in opposite directions. As neither of these situations was present here, we find no error in the trial court's granting of defendant's motion for summary judgment on count I of plaintiff's amended complaint.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

WHITE, P.J., concurs.

JUSTICE FREEMAN, dissenting:
I respectfully dissent from the majority opinion. In affirming the

grant of summary judgment for defendant on count I of plaintiff's complaint, alleging a violation of the Road Construction Injuries Act (Act), the majority has merely followed the misconstruction of the Act first rendered in *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 448 N.E.2d 188.

The *Dodson* court concluded that the Act did not apply to the facts of that case because two-way traffic was maintained on the highway where the accident at issue occurred. In so concluding, the court reasoned that the Act is "obviously concerned with the unusually dangerous situation where a highway is closed altogether (Ill. Rev. Stat. 1981, ch. 121, *pars. 314.2, 314.3*) or there is only one lane of traffic for use by vehicles traveling in opposite directions (Ill. Rev. Stat. 1981, ch. 121, *pars. 314.2, 314.3*)." (Emphasis added.) (*Dodson*, 113 Ill. App. 3d at 1067.) It is manifest that in construing the purpose of the Act, the *Dodson* court did not even consider section 4 of the Act. Moreover, there was no indication in *Dodson* as to the specific section, if any, of the Act under which the plaintiff therein was proceeding. It does not at all appear that he was proceeding, as plaintiff herein is, under section 4 of the Act. The *Dodson* court's reliance only on sections 2 and 3 of the Act, in determining its applicability and its failure to indicate whether the plaintiff was proceeding under section 4, renders its holding of little value to the proper resolution of the issue here.

The misconstruction of the Act by the *Dodson* court was first followed in *Filipetto*, on which the majority also relies. Therein, a different panel of this division of the Appellate Court, First District, merely repeated the *Dodson* holding regarding the situations in which the Act applies. It likewise concluded that the Act did not apply therein because neither situation, *viz.*, closure of a highway altogether or one traffic lane for vehicles travelling in opposite directions, was present. The *Filipetto* court, like the *Dodson* court, failed to consider the effect of section 4 on the applicability of the Act. *Filipetto*, 135 Ill. App. 3d at 786.

The third case cited by the majority as supporting its construction of the Act, *Eggers*, does reflect that the plaintiff therein was specifically relying on section 4 of the Act. Notwithstanding that fact, the *Eggers* court relied on *Dodson* and *Filipetto* in concluding that the Act was not applicable to the facts of that case. (*Eggers*, 157 Ill. App. 3d at 827.) I believe that reliance on those cases was error, given that the *Eggers* plaintiff was specifically proceeding under section 4. However, I also believe the *Eggers* court reached the correct result to the extent that it based its conclusion "on the facts that no work was be-

ing done on the roadway when the accident occurred, no lanes of traffic were closed, and the normal flow of traffic had not been interrupted." (157 Ill. App. 3d at 827.) Nonetheless, I believe the *Eggers* court and the majority here construe the *Vegich* and *Koches* cases incorrectly in order to find them supportive of their construction of the Act rather than the construction asserted by the *Eggers* plaintiff and plaintiff here.

The *Eggers* court first found that *Vegich* and *Koches* did not address the issue facing it and that they were factually distinguishable. It then noted that in *Vegich* the entire southbound lane, in which the accident at issue there had occurred, was completely closed. In *Koches,* it also noted, the excavated pit, in front of which were the barricades with which the plaintiff motorcyclist had collided, covered the entire surface of the road. The *Eggers* court thus reasoned that the road conditions present in *Vegich* and *Koches* actually rendered those cases "consistent with the restrictions on the Act's coverage" set forth in *Dodson* and *Filipetto.* (157 Ill. App. 3d at 827.) The majority, like the *Eggers* court, first finds that *Vegich* and *Koches* did not address the issue involved here and then cites the *Eggers* court's reasoning that they in fact were consistent with *Dodson* and *Filipetto.* In contrast to the majority, I believe that *Vegich* and *Koches* support plaintiff's right to proceed against defendant under section 4 of the Act without regard to the purported limitations placed on the applicability of the Act by its other sections.

In *Vegich,* the supreme court looked no further than section 4 and section 6, dealing with a contractor's liability under the Act, to decide whether contributory negligence was a bar to the plaintiff's action. To the extent that the supreme court did not question the right of the plaintiff to maintain the action under the Act other than to address the contributory negligence issue, and to the extent that it merely looked to sections 4 and 6 of the Act to decide that question, I believe that it implicitly approved the right of a plaintiff to proceed under section 4 of the Act alone. It is as reasonable to so construe *Vegich* as it is to construe it was consistent with *Dodson* and *Filipetto* on the basis of facts which were apparently of no moment to the court, *i.e.,* the road conditions involved.

*Koches,* like this case and *Eggers,* involved the grant of a summary judgment for the defendant. The *Koches* plaintiff, like the *Eggers* plaintiff and plaintiff here, relied on section 4 of the Act. Contrary to the statements of the *Eggers* court and the majority here, the applicability of the Act was directly in issue in *Koches.* Rejecting the defendant's argument that the Illinois Highway Code was controlling

in that case, the court concluded that the Act "could" apply to the case. (*Koches*, 112 Ill. App. 3d at 855.) Significantly, the court looked to no other provision of the Act in deciding that issue. Rather, it noted the general purpose of the Act, that, as a safety statute, it was subject to a liberal construction and, most importantly, the purpose of section 4 as stated in *Kreke v. Caldwell Engineering Co.* (1982), 105 Ill. App. 3d 213, 433 N.E.2d 1337, which plaintiff here cites but the majority ignores. Based upon its findings that the Act could apply and that the defendant had not proved that it was not a contractor for purposes of liability under the Act, the *Koches* court determined that the defendant was not entitled to summary judgment as a matter of law. (*Koches*, 112 Ill. App. 3d at 855-56.) Because *Koches* specifically concluded that section 4 of the Act could apply to the facts of that case without looking to the exact road conditions at issue therein, I believe the majority, like the *Eggers* court did, stretches the proper reading of that case to find that it actually supports its decision.

If the majority were to accept the reasoning of the *Koches* and *Kreke* courts rather than emphasize facts irrelevant under section 4 of the Act, I believe it would have to conclude that plaintiff can proceed thereunder regardless of whether there was two-way traffic on Cicero Avenue at the time of his accident or not. In determining whether the Act applied to the facts presented therein, the *Kreke* court looked to no other provision than the pertinent section, section 4. It then stated:

> "As noted, the purpose of the act is to protect motorists from injury or death where construction is occurring on a State highway. The purpose and intent of section 4, and the rules of the Manual to which it refers, are to insure that motorists approaching construction areas or obstructions due to construction are given adequate and sufficient advance warning of those conditions. Section 4 mandates advance warning when 'any portion of highway *** is closed to all traffic.' The obvious purpose and value of such advance warning is to alert motorists that normal traffic flow and normal traffic conditions may have been changed. It alerts traffic, *in advance*, to take *special* caution and pay *special* attention in proceeding onward." (Emphasis in original.) *Kreke*, 105 Ill. App. 3d at 222.

Admittedly, *Kreke* involved an accident on a rural highway leading to a portion closed to all traffic. However, to hold that the broad and salutary purposes of the Act in general, and section 4 in specific as construed in *Kreke*, are only effectuated where a road is closed to all traffic or there is only one lane open for vehicles travelling in oppo-

site directions requires that judges blind themselves to the realities of modern-day traffic speed and congestion. The *Kreke* court not having so qualified the purpose of section 4, it ill-serves the workers and the general public, which the Act is intended to protect, for the majority to do so. Moreover, "the Road Construction Injuries Act embodies a policy that, absent sufficiently clear advance warnings or personal knowledge of conditions of a road, motorists using it are entitled to believe that it presents no extraordinary hazards that would not normally be associated with a road." *Doyle v. Rhodes* (1984), 101 Ill. 2d 1, 18, 461 N.E.2d 382.

I believe that excavation and the barriers surrounding it which the plaintiff encountered on Cicero Avenue constituted "obstructions due to construction" on a State highway. Therefore, I believe it serves the purposes of the Act and, specifically, section 4, to find that plaintiff may proceed thereunder. I do not believe that the purported limitations upon claims under the Act relied upon by the majority legitimately bar plaintiff's right to proceed under section 4 and entitle defendant to judgment as a matter of law. As such, I would reverse the grant of summary judgment for defendant on count I of plaintiff's complaint.