GIRARD G. O'MALLEY, Plaintiff-Appellant, v. ANITA M. McQUAIG, Defendant (Harry W. Kuhn, Inc., Defendant-Appellee).

Second District   No. 2—90—0445

Opinion filed February 8, 1991.

Bruce R. Fawell, of Fawell & Fawell, of Wheaton, for appellant.

D. Kendall Griffith and Stephen R. Swofford, both of Hinshaw & Culbertson, and Kiesler & Berman, both of Chicago, Thomas A. Brabec and Robert G. Black, both of Hinshaw & Culbertson, of Lisle, Michael S. Cetina, of Connolly, Ekl & Williams, of Clarendon Hills, and James S. Jendryk, of Querrey & Harrow, Ltd., of Wheaton, for appellee.

JUSTICE INGLIS delivered the opinion of the court:

Plaintiff, Girard G. O'Malley, appeals from an order of the circuit court granting summary judgment in favor of defendant, Harry W. Kuhn, Inc., on count III of plaintiff's second amended complaint. Count III alleged that defendant violated "An Act to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois" (Ill. Rev.

Stat. 1987, ch. 121, par. 314.1 *et seq.*), commonly referred to as the Road Construction Injuries Act (Act). On appeal, plaintiff contends that the trial court erred in finding the Act inapplicable to accidents occurring in areas where a two-way flow of traffic has been maintained through a road construction site. We affirm.

On June 4, 1987, at approximately 6 p.m. plaintiff was injured when his motorcycle collided with a vehicle driven by Anita M. McQuaig, a defendant named in this suit but not a party to the appeal. The accident occurred on Illinois Route 53 between Maple Avenue and Short Street in Lisle, Illinois. Route 53 runs north/south and intersects with Short Street and, to the south, with Maple Avenue. There is a Jewel grocery store located south of Short Street, at the northwest corner of Maple Avenue. This area was under construction at the time of the accident. Specifically, the two westernmost lanes of Route 53 were newly paved and were separated from and closed to regular Route 53 traffic through the use of barricades and by the fact that this portion of the road was lower than the two easternmost lanes; the drop-off between the two portions leveled off at the area of the Jewel entrance. The two easternmost lanes of Route 53 were open to regular traffic, which was confined to one northbound lane and one southbound lane. As southbound traffic of Route 53 approached the Jewel entrance, the road gradually curved to the west and straightened out south of the entrance, expanding to four lanes of traffic: one left-turn lane, one right-turn lane and two southbound lanes proceeding straight.

The newly paved west portion of Route 53 ran from the Jewel entrance one-half mile north to Short Street and consisted of two lanes separated by a dotted line. A number of homes were located adjacent to this portion of the roadway. The Short Street access to this road was blocked by a five-foot-high barricade. The southern portion, near the Jewel entrance, was partially blocked by barricades; however, at least one lane of the road was open, providing the only access to the adjacent homes.

At the time of the accident, there was heavy rush-hour traffic on the portion of Route 53 under construction. Plaintiff was headed southbound on the newly paved section immediately prior to the Jewel entrance and planned to continue south past the area where Route 53 widened to four lanes.

At the same time, Anita McQuaig was heading southbound on the eastern portion of Route 53, her destination being the Jewel store. The traffic pattern was such that McQuaig and the other southbound cars were gradually channeled southwest at that point. As McQuaig turned

right, attempting to enter the store parking lot to the west, the right front door of her vehicle was struck by plaintiff's motorcycle. As a result of the impact, plaintiff was thrown 30 feet and suffered numerous injuries.

In counts I and II of his three-count second amended complaint, plaintiff alleged negligence by Anita McQuaig and Harry W. Kuhn, Inc. (Kuhn), the general contractor for the construction on Route 53. In count III, which is the subject of this appeal, plaintiff alleged that Kuhn violated the Road Construction Injuries Act. Specifically, plaintiff alleged that Kuhn violated sections 1 and 4 of the Act and was therefore liable under section 6 of the Act. Defendant Kuhn filed a motion for summary judgment as to count III, arguing that because Route 53 had two-way movement of traffic at the construction site, the Act is inapplicable. The trial court agreed and granted defendant's motion, finding no just reason to delay enforcement or appeal of the order. Plaintiff timely appeals pursuant to Supreme Court Rule 304(a) (134 Ill. 2d R. 304(a)).

■ We note that, generally, when no material facts are in dispute, questions of law are properly decided on a motion for summary judgment. (*Village of South Elgin v. City of Elgin* (1990), 203 Ill. App. 3d 364, 367.) Here, the undisputed facts reveal that the accident at issue occurred in a construction zone where two-way traffic was maintained. Plaintiff contends that the Road Construction Injuries Act applies in such a situation and proposes that we reject or distinguish the pertinent case law holding to the contrary.

■ It is well settled that the Act's purpose is to protect both workmen and the general public from injury or death during the construction or repair of bridges and highways within Illinois. (*Andrews v. Marshall's of Oak Lawn, Illinois, Inc.* (1988), 173 Ill. App. 3d 162, 163.) Section 1 of the Act states:

"All construction work upon bridges or highways within the State of Illinois shall be so performed and conducted that two-way traffic will be maintained when such is safe and practical, and when not safe and practical, or when any portion of the highway is obstructed, one-way traffic shall be maintained, unless the authorized agency in charge of said construction directs the road be closed to all traffic." (Ill. Rev. Stat. 1987, ch. 121, par. 314.1.)

When one-way traffic is utilized, section 2 requires the contractor to provide flagmen or traffic signals and to provide signs or signals warning approaching persons of the existence of the one-way traffic. (Ill. Rev. Stat. 1987, ch. 121, par. 314.2.) Section 3 requires that, when

one-way traffic is utilized, drivers obey warning signs and stop their vehicles if signaled to do so by a flagman or a traffic control signal. (Ill. Rev. Stat. 1987, ch. 121, par. 314.3.) Section 4 requires proper signs or barricades when highways or bridges are closed to all traffic; specifically, that section states:

"Any portion of highway or bridge which is closed to all traffic shall be marked at each place where vehicles have accessible approach to such portion of highway or bridge, and at a sufficient distance from the closed portion of such highway or bridge shall be marked with an adequate number of safe, suitable, and proper warning signs, signals or barricades as set forth in the Manual of Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation so as to give warning to approaching motorists that such portion of bridge or highway is closed and unsafe for travel. (Ill. Rev. Stat. 1987, ch. 121, par. 314.4.)

Those who knowingly and willfully violate the Act, such as contractors and drivers of motor vehicles, are liable for such violations under section 6 of the Act. Ill. Rev. Stat. 1987, ch. 121, par. 314.6.

■■ We now consider plaintiff's contention that the Act is applicable to situations where two-way traffic has been maintained through a highway construction site. This contention was first rejected in *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063. In *Dodson*, the defendant contractor had been hired by the State to improve a bridge located on the eastbound lanes of an interstate highway. During the construction, traffic was directed to the north lane of the eastbound lanes by use of temporary traffic control devices, and a solid white traffic control line was painted in the south lane. Approximately 100 feet west of the bridge, the temporary line merged with the original center line.

Before construction on the south lane was completed, a tractor-trailer traveling through the north lane collided with a guardrail, which was designed to protect errant vehicles from striking the concrete bridge abutment. The collision tore out a large segment of the guardrail, leaving the bridge abutment unprotected.

After construction on the south lane was completed, the defendant initially decided not to attempt to remove the white traffic control line because removal had proved difficult in the past and the defendant believed that the line would be worn away by traffic. When it did not wear away as anticipated, defendant attempted to cover the line with a black liquid, which proved unsuccessful as well. The following month, in the early evening, the plaintiff was a passenger in an automobile driven by his friend, heading toward the bridge. As the two ap-

proached the bridge, the plaintiff saw the white traffic control line and mentioned it to his friend, who cut sharply to the left to conform with the traffic control line. As a result, the car slid and struck the unprotected abutment.

Following a jury trial, the plaintiff appealed the jury's verdict in favor of the defendant on the Road Construction Injuries Act count. On appeal, the plaintiff argued that the jury's verdict was against the manifest weight of the evidence. However, rather than ruling on the manifest weight issue, the *Dodson* court based its decision on the applicability of the Act. The court acknowledged that, while the Act as a safety statute is to be liberally construed, the plain language of the Act cannot be ignored. The *Dodson* court held that the plain language of the Act is "concerned with the unusually dangerous situation where a highway is closed altogether [citation], or there is only one lane of traffic for use by vehicles traveling in opposite directions [citation]." (*Dodson*, 113 Ill. App. 3d at 1067.) The court concluded that because two-way traffic was maintained at all times, the statute was inapplicable to the plaintiff's cause of action. *Dodson*, 113 Ill. App. 3d at 1067.

Thereafter, the court in *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, relying on *Dodson*, affirmed summary judgment in favor of the defendant on a count alleging a violation of the Act. In *Filipetto*, the plaintiff, a minor, was injured when his bicycle collided with a trailer connected to an air compressor which was parked and left unattended in the curb of a four-lane highway. The court concluded that because the road was not closed and all lanes of traffic were in use, the Act was inapplicable. *Filipetto*, 135 Ill. App. 3d at 786.

Plaintiff argues that *Dodson* and *Filipetto* are distinguishable from the case at bar because in those cases no portion of the highway was closed or under construction. Plaintiff maintains that pursuant to section 4 of the Act, he was traveling on a "closed" road and, thus, the Act applies even though two-way traffic was maintained. Similar arguments were advanced in *Andrews v. Marshall's of Oak Lawn, Illinois, Inc.* (1988), 173 Ill. App. 3d 162, and *Macrito v. Zaverdas* (1989), 186 Ill. App. 3d 562. In each case, the appellate court affirmed the interpretation of the scope of the Act as contained in *Dodson* and *Filipetto*, specifically addressing requirements under section 4. *Andrews*, 173 Ill. App. 3d at 163-66; *Macrito*, 186 Ill. App. 3d at 567-72.

In *Andrews*, the plaintiff was operating an automobile in a northbound direction on a six-lane north/south highway, which normally had three lanes of traffic running in each direction. At the time, excavation work was being performed by the defendant in the easternmost northbound lane. The excavation consisted of an approximately eight-by-

eight-foot hole that had been filled in. Barricades had been placed over the excavation area. Due to this work, the easternmost lane of the northbound highway was partially closed; however, the remaining two northbound lanes were totally open to traffic, as were the three southbound lanes. The plaintiff was injured when he drove his car into the barricades covering the excavation work and lost control of his car and crashed.

The plaintiff appealed from the trial court's grant of summary judgment in the defendant's favor as to count I of the amended complaint, which alleged that defendant failed to comply with section 4 of the Act. The appellate court held that the Act was not applicable since two-way traffic on the highway was maintained. (*Andrews*, 173 Ill. App. 3d at 166.) The court explained that because the Act creates a strict liability action for which contributory negligence is not a defense, the Act should be limited to those unusually dangerous situations which occur when a highway is closed altogether or there is only one lane of traffic available for use by vehicles traveling in opposite directions. (*Andrews*, 173 Ill. App. 3d at 166.) The court stated that to hold otherwise would result in the Act being applied to almost any accident which could conceivably occur while construction work of any sort was being performed on the highways and bridges of this State. *Andrews*, 173 Ill. App. 3d at 166, citing *Dodson*, 113 Ill. App. 3d at 1068.

A similar result was reached by the appellate court in *Macrito v. Zaverdas*. In *Macrito*, a laborer was injured while working on a highway construction project. The highway on which the laborer was injured consisted of six lanes: three lanes for northbound traffic and three lanes for southbound traffic. Due to the construction, travel on the easternmost southbound lane was precluded by a series of tapering barricades forcing traffic to merge west into the center southbound lane. Thus, the center southbound lane and the westernmost southbound lane were open for traffic. The laborer was injured when he stepped into the center southbound lane and into the path of an automobile, which struck him. He subsequently died from the injuries he sustained.

Suit was brought under section 4 of the Act against the consulting engineers on the construction project and against the subcontractor engaged to provide traffic-control devices, among other defendants. The trial court granted defendants' motion for summary judgment, and the appellate court affirmed. The appellate court held that the Act did not apply, and the "accessible approach" language of section 4 was more "befitting of situations such as where traffic must detour from

the regular course of travel due to complete closing off of a thoroughfare [citation], or, possibly, where a highway access ramp permits approach to a length of highway completely closed off for construction." *Macrito*, 186 Ill. App. 3d at 568.

It is clear from the above cases that section 4 of the Act does not apply to the case at bar since the portion of the highway from which plaintiff was traveling was not closed to all traffic, as clearly required by the statute. (Ill. Rev. Stat. 1987, ch. 121, par. 314.4.) Plaintiff contends that the road was "closed" for purposes of the statute, arguing that in any situation where a road is closed it will nevertheless accommodate local traffic by necessity. We disagree. (See *Kreke v. Caldwell Engineering Co.* (1982), 105 Ill. App. 3d 213, 222 (traffic required to detour from the regular course of traffic due to a complete closing off of a thoroughfare).) We further reject plaintiff's argument that the "accessible approach" language in section 4 indicates that the statute was intended to apply to situations where local traffic is permitted to travel on a "closed" road. Section 4 uses the words "accessible approach" rather than simply "access." Clearly, the intent of the statute was to provide advance warning to motorists approaching the road that the road is in fact closed and unsafe for travel. There is no reference in the statute about warning motorists that a closed road is accessible.

Plaintiff's citation to *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, is similarly unpersuasive. In *Vegich*, the plaintiff was a passenger in a car that smashed into a flatbed trailer which had been parked on a section of highway closed for repairs. The subject highway was being converted to a four-lane, divided highway. The northbound lanes had already been completed and were open to traffic, but the southbound lanes were still under construction and closed to traffic. Both the plaintiff and the driver of the car had been drinking for several hours immediately before the accident, and the issue before the supreme court was whether the legislature had intended that the defense of contributory negligence be permissible in an action brought under the Road Construction Injuries Act. (*Vegich*, 84 Ill. 2d at 463.) The court held that the Act provides a strict liability action for which contributory negligence is no defense. *Vegich*, 84 Ill. 2d at 469.

Relying on Justice Pincham's dissent in *Macrito*, plaintiff argues that because the supreme court in *Vegich* did not question the plaintiff's right to bring his complaint under the Act, it thereby implicitly approved his right to do so. (*Macrito*, 186 Ill. App. 3d at 582 (Pincham, J., dissenting).) However, it is important to note that in *Vegich*, both southbound lanes were completely closed to traffic. (*Vegich*, 84 Ill. 2d

at 464.) Thus, the road conditions present in that case render the supreme court's decision consistent with the later case law interpreting the coverage of the Act. *Eggers v. H.W. Lochner, Inc.* (1987), 157 Ill. App. 3d 822, 827.

Finally, we reject plaintiff's contention that the prior case law, specifically, *Dodson* and *Filipetto*, incorrectly limited the application of the Act. Plaintiff proposes that common sense dictates that the Act applies to road construction and repair areas where two-way traffic is maintained.

We find, as did the courts in the prior cases, that the clear language of the Act indicates that it was intended to apply only in situations where one-way traffic is utilized or where a road is closed altogether. The sections of the Act specifically address these two situations; no mention is made of the standards applicable when two-way traffic is maintained. Were two-way traffic to be included, the Act would impose strict liability in tort to any accident occasioned where construction was being performed on a highway or bridge in Illinois. (*Macrito*, 186 Ill. App. 3d at 571; *Andrews*, 173 Ill. App. 3d at 166.) The appellate court explained in *Macrito*:

> "We are mindful the Act's broadly stated title is 'to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois.' [Citation.] We also realize the hazardous nature of highway construction is not lessened where two-way traffic is maintained around that activity. However, we must endeavor to give meaning to the Act by interpreting language contained within its sections, not merely its title. And we decline invitation to rewrite those provisions to encompass two-way traffic situations in usurpation of legislative prerogative to include such language." *Macrito*, 186 Ill. App. 3d at 571-72.

We agree with the *Macrito* court and find the Act inapplicable to plaintiff's cause. Therefore, the trial court's granting of defendant's motion for summary judgment on count III of plaintiff's second amended complaint was proper.

Accordingly, the judgment of the circuit court of Du Page County is affirmed.

Affirmed.

WOODWARD and NICKELS, JJ., concur.