CONSTANTINA MACRITO, Special Adm'r of the Estate of Bruno Macrito, Deceased, Plaintiff-Appellant, v. ANTHONY ZAVERDAS et al., Defendants-Appellees.

First District (5th Division)  No. 1—86—3428

Opinion filed June 30, 1989.—Rehearing denied August 22, 1989.

PINCHAM, J., dissenting.

Patrick F. Bradley, Ltd., of Chicago, for appellant.

Stephen E. Ray and Martha W. Berzon, both of Lurie, Sklar & Simon, Ltd., of Chicago, for appellees.

JUSTICE LORENZ delivered the opinion of the court:

Plaintiff appeals from an order granting summary judgment in favor of defendants dismissing counts III and IV of her complaint. The sole issue presented is whether the circuit court correctly ruled that the provisions of "An Act to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois" (Act) (Ill. Rev. Stat. 1985, ch. 121, pars. 314.1 through 314.8) do not apply where two-way flow of traffic has been maintained through a highway construction site.

We affirm.

On September 13, 1984, at approximately 10 a.m., plaintiff's decedent, Bruno Macrito, while working as a laborer on a highway construction project on the Roselle Road bridge over the Northwest Tollway in the Village of Schaumburg, was struck by an automobile driven by Anthony Zaverdas. Roselle Road is a six-lane highway with three lanes for northbound traffic and three lanes for southbound

traffic. The record indicates that due to the construction, travel on the easternmost southbound lane was precluded by a series of tapering barricades forcing traffic to merge west into the center southbound lane. The center southbound lane and the westernmost southbound lane remained open for traffic. Macrito was struck when he stepped into the center southbound lane and into the path of Zaverdas' automobile. He later died from injuries sustained.

Constantina Macrito, plaintiff's wife, filed a 10-count complaint, as amended, arising out of the accident naming the following parties as defendants: Zaverdas; the Illinois Toll Highway Authority; Christian-Roge & Associates, Incorporated (Christian-Roge), consulting engineers on the construction project; Plote, Incorporated, and Plote-Milburn Joint Venture, construction contractors; and Warning Lites of Illinois, Incorporated (Warning Lites), a subcontractor engaged to provide traffic-control devices. Eight of the counts sounded in common law negligence against the defendants and are not in issue in this appeal.

Pertinent here, counts III and IV of the complaint sought to establish liability against all named defendants based on statutorily imposed duties under the Act. Specifically, plaintiff alleged defendants wilfully violated the Act in the following respects:

"(a) failed to place and erect safe and suitable signs along Roselle Road warning traffic that portions of the road were closed to all traffic and were unsafe for travel;

(b) failed to place and erect safe and suitable barricades upon Roselle Road so as to properly close those portions of Roselle Road to all traffic;

(c) improperly positioned barricades along Roselle Road so as to permit two lane traffic along and upon Roselle Road at the overpass;

(d) failed to place and erect concrete barriers upon Roselle Road at the overpass so as to prevent vehicles from entering the working zone;

(e) failed to station a flagman at the construction site so as to slow traffic approaching the work zone and to warn the construction workers of immediate hazards;

(f) failed to place and erect signs warning traffic of the presence of flagmen; [and, as against defendant Zaverdas,]

(g) *** failed to obey warning signs at or near the site."

Subparagraphs (a) through (d), above, relate to requirements imposed under section 4 of the Act, which plaintiff cited and which provides:

"Any portion of highway or bridge *which is closed to all traffic* shall be marked at each place where vehicles have accessible approach to such portion of highway or bridge, and at a sufficient distance from the closed portion of such highway or bridge shall be marked with an adequate number of safe, suitable, and proper warning signs, signals or barricades as set forth in the Manual of Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation so as to give warning to approaching motorists that such portion of bridge or highway is closed and unsafe for travel." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 121, par. 314.4.)

We note subparagraphs (e), (f), and (g) relate to sections 2 and 3 of the Act, which plaintiff did not cite in the complaint. Section 2 provides:

"At all times during which men are working *where one-way traffic is utilized,* the contractor or his authorized agent in charge of such construction will be required to furnish no fewer than two flagmen, one at each end of the portion of highway or bridge *on which only one-way traffic is permitted,* and at least 100 feet away from the nearest point of the highway or bridge *on which only one-way traffic is safe and permitted.* The flagmen shall be equipped with safe, suitable, and proper signal devices as prescribed in the Manual on Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation, and shall so use such devices as to inform approaching motorists to stop or proceed. In addition, safe, suitable, and proper signals and signs as prescribed in the Manual shall be so placed as to warn approaching persons of the existence of any portion of highway or bridge *upon which only one-way traffic is safe and permitted.* At bridge construction or bridge repair sites, *where one-way traffic is utilized,* traffic control signals conforming to the Manual may be installed and operated in lieu of, or in addition to, flagmen. [The following two sentences were added by Public Act 82—408, §1, effective January 1, 1982.] Whenever the Department of Transportation or local authorities determine that a bridge or highway construction site requires *the closing of a road to through traffic,* the contract documents relating to such construction may specify alternate procedures for flagging and controlling traffic, when such procedures have been approved by the Department. When alternate procedures are not included, traffic control and

flagging will be as prescribed in the first paragraph of this Section." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 121, par. 314.2.)

Section 3 provides:

"Drivers of any motor vehicle approaching any section of highway or bridge *which is limited to only one-way traffic* shall obey warning signs and shall stop their vehicles if signaled to do so by a flagman or a traffic control signal." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 121, par. 314.3.

On December 4, 1985, Christian-Roge moved for summary judgment as to counts III and IV, arguing, generally, no liability could be stated under the Act because, where the accident occurred, two-way traffic had been maintained and the Act did not apply under that circumstance. Deposition statements of Edmund P. Doone, a Village of Schaumburg police officer who investigated the accident, and Larry Newby, an eyewitness, were attached for purposes of establishing that traffic was maintained both southbound and northbound on Roselle Road despite the construction.

Doone's deposition afforded the better description of how traffic was maintained through the construction prior to the accident. He related that two traffic lanes were open for southbound traffic. The easternmost southbound lane had been closed off to traffic about 60 feet south of the Roselle Road bridge over the tollway. Doone stated that two northbound lanes were also open for northbound traffic. One northbound lane had been closed. He was uncertain, however, whether the closed northbound lane was the westernmost or easternmost northbound lane.

In his deposition, Newby related his observations of the accident from the vantage of his pickup truck, which had been stopped momentarily in traffic in the westernmost southbound lane on Roselle Road. Although he was shown photographs of the site of the accident indicating, consistent with Doone's description, that Roselle Road had three northbound and three southbound lanes, Newby recalled only two northbound and two southbound lanes existed in total. Newby's deposition is consistent with Doone's, however, in establishing that northbound traffic was permitted over the northbound lanes of Roselle Road as Newby stated that he returned to the scene of the accident via northbound Roselle Road after exiting southbound to telephone police.

On December 31, 1985, Warning Lites also filed a motion for summary judgment based on grounds similar to the motion of Christian-Roge.

After a hearing on February 21, 1986, the trial court granted defendants' motions and entered an order dismissing counts III and IV of the complaint as to all defendants. This appeal followed.

OPINION

We observe at the outset that plaintiff's contentions on appeal address only whether the grant of summary judgment was proper considering the language of section 4 of the Act. As we have noted, however, the allegations under subparagraphs (e), (f), and (g) of counts III and IV sound in violation of sections 2 and 3 of the Act, not section 4. We therefore also consider, below, whether summary judgment was properly entered in consideration of liability under those sections of the Act, as well.

It is plaintiff's position that preclusion of traffic in one or more regular southbound lanes on Roselle Road due to construction constituted a closure of "[a] portion of a bridge or highway" as contemplated under section 4 of the Act. (Ill. Rev. Stat. 1985, ch. 121, par. 314.4.) Defendants, on the other hand, contend the language "any portion of" contained in section 4 is properly equated only with length or stretch of highway such that a closure of a portion of the highway occurs only where no through traffic is permitted whatsoever. Defendants rely on *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 448 N.E.2d 188, and *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358, which hold that the mandates of the Act apply only where construction allows one lane for use by vehicles traveling in opposite directions, or where the highway is closed to all through traffic, not where two-way traffic has been maintained. Plaintiff does not dispute two-way traffic was maintained on Roselle Road where the accident occurred. Instead, plaintiff submits *Dodson* and *Filipetto* were wrongly decided, arguing the restrictive interpretation given the Act in those cases is contrary to the statute's language and objectives of the legislature.

We disagree. Similar arguments were advanced unsuccessfully in *Eggers v. H.W. Lochner, Inc.* (1987), 157 Ill. App. 3d 822, 510 N.E.2d 1022, and *Andrews v. Marshall's of Oak Lawn, Illinois, Inc.* (1988), 173 Ill. App. 3d 162, 527 N.E.2d 430. In each case, the appellate court affirmed the interpretation of the scope of the Act as contained in *Dodson* and *Filipetto*, specifically addressing requirements under section 4. (*Eggers*, 157 Ill. App. 3d at 824-27, 510 N.E.2d at 1024-26; *Andrews*, 173 Ill. App. 3d at 163-66, 527 N.E.2d at 934-35.) We agree with each decision's conclusion that interpretations of the Act as contained in *Dodson* and *Filipetto* are consistent with language of the

Act. We direct attention to the court's analysis in those cases in lieu of presenting a repetitious discussion of that matter here.

■■ While the court' in neither *Dodson, Filipetto, Eggers,* nor *Andrews* was concerned with interpretation of the language "any portion of the highway or bridge" contained in section 4, we find no reason to conclude that that language evinces an intended less restrictive interpretation of the Act than is set out in those cases. Other language in section 4, requiring demarcation "where vehicles have accessible approach" to the portion of highway closed to all traffic and placement of suitable signs "at a sufficient distance from the closed portion" of the highway, suggests section 4 was not intended to apply to situations such as the instant case. (Ill. Rev. Stat. 1985, ch. 121, par. 314.4.) We do not believe that the area of a lane on which travel is permitted before traffic in that lane is merged into an adjacent lane constitutes the type of "accessible approach" reasonably contemplated under the Act. Rather, that language is befitting of situations such as where traffic must detour from the regular course of travel due to complete closing off of a thoroughfare (see, *e.g., Kreke v. Caldwell Engineering Co.* (1982), 105 Ill. App. 3d 213, 433 N.E.2d 1337), or, possibly, where a highway access ramp permits approach to a length of highway completely closed off for construction.

Beyond the statutory language itself, plaintiff argues the Manual of Uniform Traffic Control Devices for Streets and Highways prepared by the Department of Transportation, incorporated by reference in section 4, and/or the Federal Manual on Uniform Traffic Control Devices, adopted as the official manual in Illinois in 1979, indicates a less restrictive interpretation of the Act was intended by the legislature. Specifically, plaintiff points to considerations cited in the introductory section of each manual relating to the need for standard controls to protect workers when traffic must accommodate highway construction.

■■ After reviewing the provisions in each manual, we cannot agree with plaintiff that either lends support to one interpretation of the Act over another. The manuals are intended only to provide a comprehensive guide on the types and specifications of traffic control devices, including flagmen, as well as their placement and use, considering the nature of the construction activity and particular roadway. While the recognized concern for safety during road construction is not limited to situations where one-way traffic is maintained or where a highway or bridge is completely closed to traffic, we fail to find how that concern assists us in interpreting the Act. Determination in a manual adopted by the Department of Transportation of the type,

specification, and placement of devices to achieve uniformity in control of traffic around or through highway construction cannot be determinative of when the legislature mandated their use for purpose of liability under the Act.

■ Plaintiff also argues evidence of an intended less restrictive reading of the Act is found in the 1982 amendment adding the last two sentences to section 2 of the Act, set out in full above. Plaintiff notes that in its original form, the bill to amend section 2 would have made it possible to avoid the flagmen requirement on road construction projects where the average number of vehicles passing through the site was 600 or less, as well as where a road was closed to through traffic. The proposed amendment was intended as a cost or tax savings measure for State and local governments involved in road construction. After considerable debate in the House of Representatives, that portion of the bill relating to removal of flagmen on less traveled roads was removed. Elimination of that language in the amendment was based on concern that relaxation of the requirement for flagmen on less traveled roads would still compromise worker safety on those roads, albeit more infrequently than on other roads.

Typical of the concern voiced about the amendment were the comments of Representative McPike:

"[T]he purpose of the original legislation was, as the Sponsor of this Bill just said, *** common sense. It is common sense to put someone out there with a flag to tell automobiles and the drivers of those cars to slow down that there is [sic] men and women working there, and if they don't slow down they're going to kill somebody. *** [W]e believe that [workers'] safety takes preference over whatever *** notion [there is that] *** 600 vehicles a day doesn't constitute a real danger to the men working there. I think it is a good Amendment. I think it is necessary if we're going to avoid accidents to highway construction people. I support the Amendment." 82d Ill. Gen. Assem., House Proceedings, May 5, 1981, at 29 (statements of Representative McPike).

Plaintiff concludes the amendment, in its adopted form, establishes that flagmen are required at every road construction site, under section 2, unless the road has been closed to all through traffic. Plaintiff argues that conclusion is evidenced by legislative commentary, such as that above, in which limitation of the flagmen requirement contained in the amendment was rejected. Apparently by way of extended interpretation, plaintiff reasons section 4 is to be read equally broadly to apply regardless of whether two-way traffic is maintained.

After reviewing the legislative comments within the context of the language of section 2 as it existed prior to amendment, we are only able to conclude that the language of the section was not generally considered and that the amendment's effect was unintended.

Prior to amendment, the unambiguous language of section 2 required flagmen only in connection with construction where men were working *"where one-way traffic [was] utilized."* (Emphasis added.) (See Ill. Rev. Stat. 1981, ch. 121, par. 314.2.) Before addition of the last two sentences in 1982, the operative language in every sentence in section 2, excepting the one sentence referring to types of signals to be held by flagmen, pertained to situations where one-way traffic was utilized or permitted. *The Act simply did not require the presence of flagmen under any other circumstances of highway construction prior to the 1982 amendment.* Representative Pullen appeared to have some understanding of the effect of the amendment on section 2. In explaining her vote against the amendment, she stated:

"Mr. Speaker, Ladies and Gentlemen of the House, if you read Amendment No. 2 you'll find that actually it is taking out flagmen on a permissive basis on all road projects whether or not [roads] have a 600 count or less. So those who have been saying that flagmen are needed and this is very important, really ought to be voting 'no' because the Amendment is eliminating them on all road projects rather than just those with a low traffic count. The point of the Amendment obviously is to try to gut the Bill before it ever gets to Third Reading, and I think that it would be more responsible to take a look at the Bill on Third Reading and decide how you want to vote on flagmen at that time. But those who are voting 'yes' in order to protect construction crews are voting exactly opposite to how the best interest of the construction crews would work, and I urge you to defeat this Amendment." 82d Ill. Gen. Assem., House Proceedings, May 5, 1981, at 35 (statements of Representative Pullen).

The irony is notable. By its amendment in 1982, section 2 of the Act now permits alternate flagging and controlling procedures when it is determined "that a bridge or highway construction site requires the closing of a road to through traffic." (Ill. Rev. Stat. 1985, ch. 121, par. 314.2.) However, prior to that amendment, *no requirement for flagmen existed where a road was closed to through traffic under the language of that section.* Indeed, pursuant to section 3, which was left unaltered, liability under the Act for drivers of motor vehicles relating to flagmen is limited to obeying flagmen or warning signals when

"approaching any section of highway or bridge *which is limited to only one-way traffic*" as is consistent with the language of section 2 prior to amendment. (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 121, par. 314.3.) Section 3 makes no mention of a driver's duty when approaching a road closed to through traffic where alternate procedures are not specified in contract documents, as now permitted in section 2, or, for that matter, where two-way traffic is maintained.

In short, in adopting an amendment which sought to provide a savings measure by permitting avoidance of the flagmen requirement, the legislature succeeded in adding to section 2 a further situation necessitating the presence of a flagman. Section 2 can now be reasonably read to require flagmen not only where one-way traffic is permitted or utilized, but also where a road is closed to through traffic in the absence of alternate specification in contract documents. However, because section 2, neither before nor after its amendment, imposed any requirement for the presence of flagmen where two-way traffic was maintained through construction, elimination of language relating to the flagmen requirement on infrequently traveled roads provides no guidance in interpreting section 4.

■ We conclude that because two-way traffic was maintained on Roselle Road, plaintiff here can state no liability under section 4 of the Act. Further, based on our analysis of sections 2 and 3 above, we conclude no basis for liability exists under allegations respecting violations under those sections of the Act, as well. The unambiguous language of those sections simply does not encompass highway construction situations other than where one-way traffic is maintained or, in view of the amendment to section 2, where the road is closed to through traffic.

To interpret the Act in the manner urged by plaintiff here would conceivably extend the Act's reach, imposing strict liability in tort, to any accident occasioned where construction was being performed on a highway or bridge in Illinois. (*Andrews v. Marshall's of Oak Lawn, Illinois, Inc.* (1988), 173 Ill. App. 3d 162, 166, 527 N.E.2d 430, 433.) The language of the Act does not permit that interpretation. We are mindful the Act's broadly stated title is "to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois." (Ill. Rev. Stat. 1985, ch. 121, pars. 314.1 through 314.8.) We also realize the hazardous nature of highway construction is not lessened where two-way traffic is maintained around that activity. However, we must endeavor to give meaning to the Act by interpreting language contained within its sections, not merely its title. And we decline invitation to rewrite

those provisions to encompass two-way traffic situations in usurpation of legislative prerogative to include such language.

For the reasons stated above, we conclude summary judgment was properly granted as to counts III and IV of plaintiff's complaint.

Affirmed.

MURRAY, P.J., concurs.

JUSTICE PINCHAM, dissenting:
I dissent. I do not agree with the majority's conclusion that:

"[T]he circuit court correctly ruled that the provisions of 'An Act to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois' (Act) (Ill. Rev. Stat. 1985, ch. 121, pars. 314.1 through 314.8) do not apply where two-way flow of traffic has been maintained through a highway construction site." (186 Ill. App. 3d at 563.)

Nor do I agree with the majority's conclusions that:

"Other language in section 4, requiring demarcation 'where vehicles have accessible approach' to the portion of highway closed to all traffic and placement of suitable signs 'at a sufficient distance from the closed portion' of the highway, suggests section 4 was not intended to apply to situations such as the instant case." (186 Ill. App. 3d at 568.)

Moreover, contrary to the majority's opinion, I am of the opinion that:

"[T]he area of a lane on which travel is permitted before traffic in that lane is merged into an adjacent lane constitutes the type of 'accessible approach' reasonably contemplated under the Act." 186 Ill. App. 3d 568.

I also disagree with the majority's illogical interpretations that:

"[The Act's] language is befitting of situations such as where traffic must detour from the regular course of travel due to *complete closing off of a thoroughfare* [citation] or, possibly, where a highway access ramp permits approach to *a length of highway completely closed off for construction*." (Emphasis added.) (186 Ill. App. 3d at 568.)

These foregoing interpretations of the Act by the majority simply do not make sense. There is no public vehicular traffic in a highway construction zone "where [that] traffic must detour from the regular course of travel due to *complete closing off of a thoroughfare*," or where the highway has been *"completely closed off for construction."*

(Emphasis added.) 186 Ill. App. 3d at 568.

The majority's contention that

"the legislature succeeded in adding to section 2 [of the Act] a further situation necessitating the presence of a flagman[ ] *** where a road is closed to through traffic" (186 Ill. App. 3d at 571)

is likewise nonsensical. There is no need for a flagman where a road is closed. There is no traffic on a road that is closed.

I differ with and disapprove of the majority's conclusions that:

"Because two-way traffic was maintained on Roselle Road, plaintiff here can state no liability under section[s] [2, 3 and] 4 of the Act, [and] [2] [t]he unambiguous language of those sections simply does not encompass highway construction situations other than where one-way traffic is maintained or *** where the road is closed to through traffic." 186 Ill. App. 3d at 571.

There is nothing, and the majority has not pointed out anything, in the language of the Act or in its legislative history which justifies the majority's foregoing unwarranted restricted conclusions and interpretations of the Act. The language of the Act and its legislative history do not sustain the majority's erroneous and unsupported assertions that:

"To interpret the Act in the manner urged by plaintiff here would conceivably extend the Act's reach, imposing strict liability in tort, to any accident occasioned where construction was being performed on a highway or bridge in Illinois. [Citation.] The language of the Act does not permit that interpretation." (186 Ill. App. 3d at 571.)

Moreover, plaintiff in the case at bar has not urged such an interpretation.

In spite of and converse to the majority's specious and sanctimonious declaratory declination

"to rewrite those provisions [of the Act] to encompass two-way traffic situations in usurpation of legislative prerogative to include such language" (186 Ill. App. 3d at 571-72),

nevertheless, that is precisely what the majority has done in the case at bar. The majority has rewritten the Act to exclude the traffic situation in the case at bar, not in usurpation, but rather indeed in violation of and contrary to the legislature's prerogative, which included such traffic situation. If the legislature had intended to exclude from the Act the "two-way traffic situation" involved in the instant case, it would have, and it certainly could have simply said so. But not having

said so, it is not befitting, and it is improper and inappropriate, for this court to say so by a convoluted interpretation of the legislature's enactment.

Plaintiff Constantina Macrito brought this action on behalf of her husband Bruno Macrito, deceased, alleging that defendants, the Illinois Toll Highway Authority; Plote, Inc., and Plote-Milburn Joint Venture, general contractors; Christian-Roge & Associates, Inc., construction engineers; and Warning Lites of Illinois, Inc., a traffic control company, were guilty of violations of provisions of "An Act to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois (Ill. Rev. Stat. 1983, ch. 121, par. 314.1 *et seq.*) (the Act), which resulted in the death of Bruno Macrito. The allegations of plaintiff's complaint are adequately set forth in the majority opinion. The facts upon which the allegations of plaintiff's complaint were based were as follows.

On September 13, 1984, between 10:15 and 11 a.m., Bruno Macrito was struck and injured by an automobile driven by defendant Anthony Zaverdas from which he died several days later. At the time of the accident Bruno Macrito was a highway construction laborer working on reconstruction of the Roselle Road bridge over the Northwest Tollway in the Village of Schaumburg.

The Roselle Road bridge was being reconstructed under a contract between the defendants Illinois Toll Highway Authority and the Plote-Milburn Joint Venture. The bridge reconstruction was supervised by the tollway's consulting supervisor, defendant Christian-Roge and Associates, Inc. Defendant Warning Lites was the traffic control subcontractor for the bridge reconstruction work.

Roselle Road is divided into three northbound lanes, three southbound lanes and a median area. It is unclear from the record before us whether all northbound lanes of the Roselle Road bridge over the Northwest Tollway were open. It is undisputed, however, that Bruno Macrito was struck in the center southbound lane of Roselle Road, which, like the right, westernmost southbound lane was open for traffic, and that the left, easternmost southbound lane was barricaded and closed to traffic.

The southbound lanes and the traffic conditions at the time and place of Bruno Macrito's fatal accident were witnessed and described by the testimony of Larry Newby. Newby was driving his Ford pickup truck southbound on Roselle Road toward the Roselle Road bridge over the Northwest Tollway. From a distance of approximately 500 feet from the bridge overpass, Newby noticed that the southbound traffic ahead of him was "braking and merging to the right." It ap-

peared to Newby that the southbound traffic ahead of him was "closing together" or "starting to bottleneck" as it approached the bridge. The left, easternmost southbound lane was closed by a series of tapered barricades which required vehicles in the left lane to merge into the center southbound lane. Newby merged into the right, westernmost southbound lane before he got to the bridge, proceeded onto the bridge, and stopped his vehicle behind a line of vehicles in that lane. Apparently other vehicles ahead of him in the left, easternmost southbound lane were having difficulty merging to the right into the center southbound lane. Newby related that the tapering of the barricades on the bridge blocking out the left, easternmost southbound lane and compelling the traffic in that lane to merge into the center southbound lane was "more severe" than Newby had seen at any other road construction site.

After Newby stopped his vehicle, he noticed that road construction machinery was being maneuvered in the median area and in the closed and barricaded left, easternmost southbound lane. Newby also saw Bruno Macrito standing in front of the stopped line of vehicles in the right, westernmost southbound lane. Bruno Macrito was standing on top of the overpass or bridge of Roselle Road over the Northwest Expressway and had his right hand on the hood of the stationary automobile at the front of the right, westernmost southbound lane of vehicles. Macrito, while gesturing with his left hand, was talking to some of his co-workers who were on the shoulder of the southbound traffic lanes. Newby "was in the right lane on the incline of Roselle Road just before it peaked *** not quite to the crown of the bridge." Just before the occurrence, Macrito stepped approximately three feet into the middle lane, while simultaneously turning to face the southbound traffic. It was at this point that he was struck by the automobile driven by defendant Anthony Zaverdas. Newby estimated the speed of Zaverdas' automobile to have been between 40 and 45 miles per hour. Newby testified that there were no signs on Roselle Road warning of lane closures and that there were no flagmen to slow, stop or otherwise direct traffic.

Plaintiff's complaint alleged that defendants willfully violated the terms and provisions of the Act. Defendants filed motions for summary judgment contending that the Act had no application to the Roselle Road overpass because it, the road under construction, was not completely closed. The trial court granted defendants summary judgment on counts III and IV of plaintiff's complaint on the ground urged by defendants, that the Act was inapplicable because the road under construction, the Roselle bridge, was not completely closed.

This case involves an interpretation of "An Act to protect workers and the general public from injury or death during construction or repair of highways and bridges in the State of Illinois." (Ill. Rev. Stat. 1983, ch. 121, par. 314.1 *et seq.*) The purpose of the Act is clearly, fully and unequivocally expressed in the title of the Act, as stated.

The first section of the Act (Ill. Rev. Stat. 1983, ch. 121, par. 314.1) provides that all construction work upon bridges or highways shall be performed and conducted so that two-way traffic will be maintained when safe and practical and that one-way traffic will be maintained when two-way traffic is not safe and practical or when the highway is obstructed, "unless the authorized agency in charge of said construction directs the road be closed to all traffic." Ill. Rev. Stat. 1983, ch. 121, par. 314.1.

Section 4 of the Act provides:

> "*Any portion* of highway or bridge which is closed to all traffic shall be marked at each place where vehicles have accessible approach to such portion of highway or bridge, and at a sufficient distance *from the closed portion of such highway or bridge* shall be marked with an adequate number of safe, suitable, and proper warning signs, signals or barricades as set forth in the Manual of Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation so as to give warning to approaching motorists that *such portion of bridge or highway is closed* and unsafe for travel." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 121, par. 314.4.

It is provided in section 6 of the Act:

> "Any contractor, subcontractor, or his *** authorized agent or driver of any motor vehicle who knowingly or willfully violates any provision of this Act, shall be responsible for any injury to person *** occasioned by such violation, and a right of action shall accrue to any person injured for any damages sustained thereby; and in case of loss of life by reason of such violation, a right of action shall accrue to the surviving spouse of the person so killed *** for a like recovery of damages sustained by reason of such loss of life." Ill. Rev. Stat. 1985, ch. 121, par. 314.6.

Plaintiff alleged that at the time and place where Bruno Macrito was struck, a "*portion of*" the highway or bridge, one lane of the highway, was closed to traffic for construction, that the provisions of the Act were therefore applicable and that the defendants willfully violated the Act by failing to provide appropriate warning signs, barricades, flagmen or both.

As authority for the erroneous conclusion that the Act does not apply "where two-way flow of traffic has been maintained through a highway construction site," the defendants, the trial court and the majority in the case at bar mistakenly rely on *Andrews v. Marshalls of Oak Lawn, Illinois, Inc.* (1988), 173 Ill. App. 3d 162, 527 N.E.2d 430, *Eggers v. H.W. Lochner, Inc.* (1987), 157 Ill. App. 3d 822, 510 N.E.2d 1022, *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358, and *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 448 N.E.2d 188. Although each of the foregoing decisions is cited in the majority opinion, neither is therein discussed. Understandably so. Neither correctly supports the majority's aforesaid erroneous interpretations and conclusions.

*Dodson* is readily distinguishable from the instant case. In *Dodson,* the court was not called upon to decide whether the Act applied "where two-way flow of traffic has been maintained through a highway construction site," the issue presented here. In *Dodson,* it was undisputed that no portion of the highway was closed or under construction and the provisions of the Act therefore were really not involved. In *Dodson,* all of the construction work had been completed and all barricades and warning signs had been removed from the road construction site. The plaintiffs were injured when the plaintiff driver, under the influence of drugs and alcohol, drove his automobile off the highway into a bridge abutment when he became confused by old, inaccurate markings on the pavement. Nevertheless, the *Dodson* court stated and concluded wholly from gossamer cloth and in the complete absence of any citation of decision or other authority, and also without even any supportive interpretative discussion of the Act, that:

> "In our opinion the act does not apply to the plaintiff's claimed violations of the Act at the Camp Creek construction site at the time of the accident.
>
> The act's purpose is to protect workmen and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois. * * *
>
> Although we acknowledge that the act, as a safety statute, is to be liberally construed [citation], we cannot ignore the plain language of the act. *It is obviously concerned with the unusually dangerous situation where a highway is closed altogether.* (Ill. Rev. Stat. 1981, ch. 121, pars. 314.2, 314.3), or there is only one lane of traffic for use by vehicles traveling in opposite directions. [Citation.] *Neither situation was present at Camp Creek, where two-way traffic was maintained at all times, and the statute is, therefore, inapplicable.*" (Emphasis added.) 113

Ill. App. 3d at 1067.

The *Dodson* court neglected to point out any, or which, provision of *"the plain language of the act"* that was *"obviously concerned with the unusually dangerous situation where a highway is closed altogether."* (Emphasis added.) (113 Ill. App. 3d at 1067.) Moreover, a highway which is closed altogether is not usually dangerous from public vehicular traffic. A highway which is closed altogether is not dangerous at all. There is no public vehicular traffic on a highway that is closed altogether.

As stated, the language of the Act and its legislative history do not support or justify such a restricted interpretation concocted by the *Dodson* court and the majority in the case at bar. The surreptitious motive for the *Dodson* court's limiting interpretation of the Act is disclosed in the following language of the *Dodson* court:

> "Should we adopt plaintiff's construction of the act, it would be applicable to almost any accident that one could conceive that occurred while construction work of some sort was being performed on any highway or bridge in this State, even though at the time of the accident the roadway was open to two-way traffic." 113 Ill. App. 3d at 1068.

Like the *Dodson* court, the majority in the case at bar was also improperly concerned with, incorrectly influenced by and unduly persuaded because:

> "To interpret the Act in the manner urged by plaintiff here would conceivably extend the Act's reach, imposing strict liability in tort, to any accident occasioned where construction was being performed on a highway or bridge in Illinois." (186 Ill. App. 3d at 571.)

These improperly considered inapt concerns of the *Dodson* court and the majority in the instant case were appropriate considerations only of the legislature and not of the court. Moreover, it is ludicrous to suppose, particularly in the complete absence of any supportive statutory language or legislative history, that the legislature in enacting "[A]n Act to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois" (Ill. Rev. Stat. 1983, ch. 121, par. 314.1 *et seq.*) intended to protect the public and construction workers from public vehicular traffic accident hazards on completely closed public highway construction sites, where no such hazards exist, but did not intend to protect them from such extremely hazardous two-way traffic highway construction sites. The mere statement of the proposition exposes its preposterousness. The majority is compelled to confess, "We also real-

ize the hazardous nature of highway construction is not lessened where two-way traffic is maintained around that activity." 186 Ill. App. 3d at 571.

The majority's interpretation and construction of the Act not only fails to support and give meaning to the legislature's expressed purpose of the Act, "to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois" (Ill. Rev. Stat. 1983, ch. 121, par. 314.1 *et seq.*), but also, and more importantly, the majority's interpretation affirmatively defeats the Act's expressed purpose, as does *Dodson*.

So does *Filipetto v. Village of Wilmette* (1985), 135 Ill. App. 3d 781, 482 N.E.2d 358, cited by the majority. In *Filipetto*, like in *Dodson*, unlike in the instant case, no portion of the road or bridge was closed and there was no road or bridge construction. In *Filipetto*, there was simply an obstruction, an air compressor, at the curb of a residential street, into which plaintiff collided while riding his bicycle. Plaintiff brought suit under the Act to recover for the injuries he sustained from the collision. The defendant contractor who placed the compressor in the street argued that the placement and location of the compressor was not the proximate cause of plaintiff's injuries. Defendant, the Village of Wilmette, contended that it was not a highway or bridge construction contractor within the meaning of the Act. The trial court granted the village and the contractor summary judgment. This court obsessively, but just as inappropriately, followed *Dodson* and affirmed, simply stating, in total, regarding applicability of the Act:

> "Plaintiff also contends that the trial court erred in granting judgment on his claims under the road construction injuries act contained in counts III and IV. The trial court held that the village was not a contractor within the meaning of the act and that, assuming a violation of the act by Artley [the contractor], the violation was not a proximate cause of plaintiff's injuries.

> We need not reach either issue, since under the holding in *Dodson v. Shaw* (1983), 113 Ill. App. 3d 1063, 1067, 448 N.E.2d 188, 191, *the act is only 'concerned with the usually dangerous situation where a highway is closed altogether* [citation], or there is only one lane of traffic for use by vehicles traveling in opposite directions [citation].' Neither situation is present here, and the trial court properly granted summary judgment in favor of the village and Artley on counts III and IV." (Emphasis added.) 135 Ill. App. 3d at 786.

The *Filipetto* court, like the *Dodson* court, did not point out one

paragraph, one sentence, one phrase, or one word in the Act from which it concluded or upon which it opined that the Act is only concerned with the usually dangerous situation where a highway is closed altogether, or where there is only one lane of traffic for vehicular traveling in opposite directions.

Following *Dodson* and *Filipetto* came *Eggers v. H.W. Lochner, Inc.* (1987), 157 Ill. App. 3d 822, 510 N.E.2d 1022, also cited by the majority in the case at bar, but which likewise is not in point. *Eggers* drove his car into the rear of a vehicle owned by defendant Lochner parked on the shoulder of Interstate 294. The Lochner employee driver had parked and left the vehicle to inspect the drain and sewer, installed by defendant Peabody Construction, 30 to 75 feet from the shoulder. After pointing out that the road was not closed and all lanes of traffic were in use in *Dodson* and *Filipetto*, the *Eggers* court affirmed the trial court's summary judgment for the defendant on the grounds:

> "*[B]ased on the facts that* no work was being done on the roadway when the accident occurred, *no lanes of traffic were closed,* and the normal flow of traffic had not been interrupted, we agree with the circuit court that the Road Construction Injuries Act is not applicable to PMC and summary judgment was properly entered." (Emphasis added.) 157 Ill. App. 3d at 827.

A majority of this court improperly relied on *Dodson, Filipetto* and *Eggers* in erroneously affirming summary judgment in favor of the defendant in *Andrews v. Marshall's of Oak Lawn, Illinois, Inc.* (1988), 173 Ill. App. 3d 162, 527 N.E.2d 430, to which Justice Freeman persuasively dissented. In *Andrews*, plaintiff, while driving northbound in the easternmost lane on Cicero Avenue in Chicago, drove into a barricade which surrounded a filled excavation hole. Cicero Avenue was a north-south highway, with three traffic lanes in each direction. Because of the excavation, the filled hole and the barricade around it, the easternmost lane of northbound Cicero was partially closed. Plaintiff alleged that defendant, who was involved in the excavation work, failed to comply with section 4 of the Act, in that the excavation work constructed a closure of the highway within the meaning of section 4 of the Act. In affirming the trial court's summary judgment for defendant, the following language of the *Andrews* majority clearly reveals that it, like the *Dodson* and *Filipetto* courts, improperly relied on and was erroneously persuaded by matters and considerations within the exclusive province and concern of the legislature, and not the court:

> "Were we to accept plaintiff's interpretation of section 4, the

Act would apply to almost any accident which could conceivably occur while construction work of any sort was being performed on the highways and bridges of this State. *** Moreover, because the Act creates a strict liability action for which contributory negligence is not a defense, we believe that the Act should be limited to those unusually dangerous situations which occur when a highway is closed altogether or there is only one lane of traffic available for use by vehicles traveling in opposite directions." (173 Ill. App. 3d at 166.)

Thus, the *Andrews* majority, like the *Dodson* and *Filipetto* courts, improperly interpreted the Act in accordance with those courts' perceived desired statutory results, rather than in proper accordance with language of the Act and the legislature's intent as expressed therein.

Justice Freeman's dissenting opinion in *Andrews* points out that:
"In affirming the grant of summary judgment *** the majority has merely followed the misconstruction of the Act first rendered in *Dodson* ***.

*** The *Dodson* court's reliance only on sections 2 and 3 of the Act, in determining its applicability and its failure to indicate whether the plaintiff was proceeding under section 4, renders its holding of little value to the proper resolution of the issue here.

The misconstruction of the Act by the *Dodson* court was first followed in *Filipetto*, on which the majority also relies."
*Andrews*, 173 Ill. App. 3d at 167 (Freeman, J., dissenting).

Justice Freeman concluded in *Andrews* that the supreme court's application of sections 4 and 6 of the Act in *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, implicitly approved the right of plaintiff in *Andrews* (and also in the instant case), to proceed under section 4 of the Act. Justice Freeman additionally pointed out that under the majority's interpretation and application of the Act in *Andrews*, the broad and salutary purposes of the Act, as expressed by the court in *Kreke v. Caldwell Engineering Co.* (1982), 105 Ill. App. 3d 213, 433 N.E.2d 1337, require that judges blind themselves to the realities of modern-day traffic speed and congestion.

Justice Freeman finally concluded in his dissent in *Andrews* that the excavation and the barriers surrounding it, which plaintiff struck on Cicero Avenue, were an obstruction on a State highway construction site and the Act therefore applied. I agree with Justice Freeman's aforesaid statements, interpretations and conclusions.

In *Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461, on

which the plaintiffs relied in *Andrews* and *Eggers* (and in the case at bar), but both of which are ignored by the majority in the case at bar, plaintiff was injured when the southbound car in which he was a passenger and whose driver had been drinking alcohol ran into a vehicle parked in the southbound lane on a highway which had been completely closed for construction repairs. The highway was being converted into a four-lane divided highway, the northbound lanes of which had been completed and were open to two-way traffic. The issue before the supreme court in *Vegich* was not the applicability of the Act based upon the closure condition of the highway. Rather, the issue in *Vegich* was whether contributory negligence was an available defense under the Act. The supreme court did not question plaintiff's right to bring his complaint under the Act, and to that extent it implicitly approved plaintiff's right to proceed under the Act, where lanes were closed but where there was also two-way traffic, as was also in the case at bar. Thus, the majority's holding in the instant case is repugnant to the supreme court's contrary holding in *Vegich*.

The majority's holding in the instant case is likewise contrary to the supreme court's holding in *Koches v. Chicago & Illinois Midland Ry. Co.* (1983), 112 Ill. App. 3d 851, 445 N.E.2d 948, which holding the instant majority and the *Dodson* and *Filipetto* courts also ignore. In *Koches*, an excavated pit covered the entire surface of the road where a railroad crossing had been, for which there were no warning signs or lights to warn motorists of the impending road danger. Plaintiff was injured when his vehicle struck the barricade around the excavation. Plaintiff sued, and the trial court granted the defendant summary judgment on the ground that the term "contractor" as used in the Act did not apply to the defendant Chicago and Illinois Midland Railway Company. The appellate court reversed on the ground that whether a "contractor" referred to in the Act applied to the defendant railroad company was a question of material fact which precluded summary judgment and concluded that the Act could apply to the facts of the case, without resort to the precise road conditions.

The majority in the case at bar and the majority in *Andrews* improperly "emphasize facts irrelevant under section 4 of the Act" (*Andrews*, 173 Ill. App. 3d at 169), whereas, as Justice Freeman's dissent points out in *Andrews*, "the *Filipetto* court, like the *Dodson* court, failed to consider the effect of section 4 on the applicability of the Act." 173 Ill. App. 3d at 167 (Freeman, J., dissenting).

The court relied only on section 4 of the Act in *Kreke v. Caldwell Engineering Co.* (1982), 105 Ill. App. 3d 213, 433 N.E.2d 1337, where the plaintiff motorist was injured on a rural highway leading to a por-

tion of the highway which was closed to all traffic, and held that as a safety statute, it was to be liberally construed. The *Kreke* court did not limit or condition application of the Act to a road closed to all traffic or to a road with only one lane open for vehicles traveling in opposite directions. The *Kreke* court concluded:

"As noted, the purpose of the act is to protect motorists from injury or death where construction is occurring on a State highway. The purpose and intent of section 4, and the rules of the Manual to which it refers, are to insure that motorists approaching construction areas or obstructions due to construction are given adequate and sufficient advance warning of those conditions. Section 4 mandates advance warning when 'any portion of highway *** is closed to all traffic.' The obvious purpose and value of such advance warning is to alert motorists that normal traffic flow and normal traffic conditions may have been changed. It alerts traffic, *in advance*, to take *special* caution and pay *special* attention in proceeding onward." (Emphasis in original.) *Kreke*, 105 Ill. App. 3d at 222.

The Act expressly applies when *"any portion of* a highway or bridge" is closed. If the Illinois General Assembly, which fluently speaks, reads, writes and understands the English language, had intended to limit the application of the Act to the conditions in which the highway or bridge was totally closed to all traffic, or to one lane for traffic traveling in opposite directions, it would have said so. But, as stated, if a highway is *"closed altogether,"* there is no traffic thereon from which traffic hazards may flow. Just as a *"portion of"* a road may be obstructed, a *"portion of"* a road may be closed. A portion of the Roselle Road bridge, one lane, over the tollway, at which plaintiff Bruno Macrito was injured, was closed within the plain and express language of the Act.

The construction of the Act urged by plaintiff should be accepted because such a construction furthers the expressed objectives and purposes of the Act. (*Bauer v. H.H. Hall Construction Co.* (1986), 140 Ill. App. 3d 1025, 489 N.E.2d 31.) In *Bauer*, the same court which decided *Dodson* was once again called upon to interpret the Act. The court then ruled that a bicyclist is entitled to the protections of the Act even though section 4 of the Act refers only to warnings for motorists. In *Bauer*, the court noted that all sections of a statute should be construed together so as to arrive at a harmonious construction consistent with the purpose of the statute. (140 Ill. App. 3d at 1028.) When the Act is viewed in its entirety and with a view toward furthering the protections which the General Assembly intended to af-

ford workers and the general public at road construction sites, there can be no doubt that the Act applies to the instant case.

The *Bauer* court further noted that when different interpretations of a statute are urged, the court should be guided not only by the language of the Act, but also by the reasons for the enactment and the purposes to be obtained. (140 Ill. App. 3d 1025, 489 N.E.2d 31.) When that is done in the instant case, plaintiff's proffered interpretation of the Act must be adopted. The legislature clearly intended to provide protection for workers and the general public where hazardous traffic must be moved around or through road construction sites.

This legislative intent is evidenced not only by the language of the Act, but also by the provisions of the Manual on Uniform Traffic Control Devices for Streets and Highways, which is incorporated in the Act by reference. The Act was amended effective January 1, 1982, by section 2, which provides that "flagmen shall be equipped with safe, suitable, and proper signal devices as prescribed in the Manual on Uniform Traffic Control Devices for Streets and Highways published by the Department of Transportation." (Ill. Rev. Stat. 1985, ch. 121, par. 314.2.) The Act was intended to provide protection under these circumstances by requiring compliance with the standards of the manual.

The 1973 and 1979 editions of the manual, plaintiff's exhibit A in the trial court, were prepared by the Department of Transportation pursuant to a mandate from the General Assembly and, as stated, referred to and incorporated in the Act. (Ill. Rev. Stat. 1973, ch. 95½, par. 11—301.) The manual states in pertinent part:

> "[1973] 6—1.1 NEED FOR STANDARDS. Working on or adjacent to roadways while traffic is moving is dangerous. It is dangerous to workmen who are constantly exposed to a stream of vehicular traffic, as well as to the motorist who may suddenly be forced into a situation that he did not or could not anticipate. The relatively high frequency and cost of accidents related to roadway and utility construction and maintenance indicate a need for positive traffic control *in areas where work is being performed. A need for stringent traffic control exists under conditions encountered where traffic must be moved through or around road or other construction and maintenance operations.* Such conditions, which are essentially temporary, are more dangerous and difficult to control because, to the motorist, they are unexpected and not in accordance with the normal pattern of highway traffic." (Emphasis added.)

> "[1979] 6A—1 NEED FOR STANDARDS. Problems of traf-

fic control occur when traffic must be moved *through* or around road or street construction, maintenance operations, and utility work. No one standard sequence of signs or other control devices can be set up as an inflexible arrangement for all situations due to the *variety of conditions encountered.*" (Emphasis added.)

The Act requires compliance with the standards of the manual and both are intended to protect workers and the general public in all "areas where [roadway construction] work is being performed." It is inconceivable that the legislature intended to provide protection for workers and the general public only where traffic must detour around road construction sites, and not for those workers and the general public exposed to the more hazardous condition of traffic moving through road construction sites. The illogical and unjust consequences flowing from such a distorted construction of the Act are legion. For example, a worker on a road which is closed to all traffic and thus no traffic hazards would be entitled to the protections of the Act, while a worker, such as plaintiff Bruno Macrito, exposed to hazardous traffic maneuvering through his work site, would not. Likewise, a motorist who must detour around a road construction site would be protected by the Act, whereas a motorist who must drive through a road construction site, under conditions which are "unexpected and not in accordance with the normal pattern of highway traffic," would not. Road construction is hazardous by its nature. It is extrahazardous to both the worker and motorist when they must share the same roadway. For the worker, the greatest danger is traffic which must be moved through his work zone.

It is not always possible, feasible or advisable to totally close a highway for construction or repair. Indeed, it is difficult to conceive of a situation, other than a rare and extreme emergency, where a limited access facility, such as the tollway, might be completely closed. On the other hand, most motorists have encountered barricades closing one or more lanes of a highway so that construction work can be performed on the closed lane or lanes. Generally, where a highway or bridge is only partially under construction repair, the lane or lanes under construction repair are barricaded and other lanes remain open so that construction and traffic can function simultaneously. Under those conditions, a portion of the highway has been closed and both the workers and the motorists are entitled to the protections of the Act. Such was the obvious intent of the legislature when it enacted the Act.

The dominant purpose and objective of the legislation is to pre-

vent the occurrence of accidents at road construction sites, and failing that, to compensate those persons injured by this extrahazardous but required activity. (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461.) The Act, a safety statute, must be liberally construed in order to effectuate the intent of the legislature and the purpose of the legislation. (*Vegich v. McDougal Hartmann Co.* (1981), 84 Ill. 2d 461.) A basic rule of statutory construction is that the words or phrases of a statute are to be given effect in a manner consistent with the intent of the legislature. *Bauer v. H.H. Hall Construction Co.* (1986), 140 Ill. App. 3d 1025, 489 N.E.2d 31; *City of Springfield v. Board of Election Commissioners* (1985), 105 Ill. 2d 336.

A review of the Act leads to the inescapable conclusion that the Act applies when one or more lanes of a highway have been closed so that construction work can be performed. Under this interpretation, both the worker and the motorist are protected by the Act. Plaintiff's interpretation gives vitality to the plain language of the Act by giving effect to every provision in a manner which brings all sections of the Act together in furtherance of the express purpose of the legislation, "to protect workers and the general public from injury or death during construction or repair of highways and bridges in the State of Illinois." The majority's interpretation, which restricts the application of the Act solely to highways or bridges which have been *closed altogether* to traffic or *to single lane traffic in opposite directions,* is contrary to the express purpose and objectives of the legislature and its legislation.

The following Chicago Sun-Times editorial, Thursday, June 29, 1989, page 46, entitled, "Give road workers a brake," and the accompanying emblem, "Give 'em a BRAKE Slow Down," opined on the extreme hazards to construction workers and motorists at highway construction sites:

"Ask anyone who works on a road crew if motorists are likely to slow down in highway work zones, and you'll probably get a big guffaw. Despite warning signs and despite flagmen, some motorists insist on driving through construction and maintenance zones as if nothing were different, as if no one were in danger.

And, as a result, people die. Two more died last weekend when a car veered into a work crew on the Calumet Expy. at 115th Street on the Southeast Side. Last year 23 people died in accidents at roadside work sites in Illinois. Some 2,600 people a year are seriously injured in such accidents.

In the past five years, there have been 35,000 such accidents.

The Illinois Transportation Department has tried a lot of things to reduce the toll. Two months ago it started the 'Give 'em a Brake, Slow Down' public information campaign. And it plans to hire more uniformed, off-duty state troopers to patrol work zones in marked cars.

Despite such efforts, the message doesn't seem to get through to people who think that making up a few seconds of their own time in a work zone is more important than someone's lifetime.

But if they're so interested in their own time, maybe this thought will slow them down: Of the 23 people killed last year in such accidents, 16 were motorists."

The General Assembly of this State nobly sought to rectify highway and bridge construction site hazards to the public and construction workers when it enacted "An Act to protect workers and the general public from injury or death during construction or repair of bridges and highways within the State of Illinois." (Ill. Rev. Stat. 1985, ch. 121, par. 314.1 *et seq.*) The judiciary of this State, however, by convoluted and distorted interpretations of the Act in *Dodson, Filipetto, Andrews* and the instant case, has erroneously undermined and thwarted this much needed, desired and beneficial legislative endeavor.

Finally, I am constrained to observe that, contrary to the majority's assertions, I do not find anywhere in the case at bar that plaintiff concludes that the Act establishes that flagmen are required at every road construction site unless the road has been closed to all through traffic under section 2. Nor do I find any basis for this assertion by the majority.

I conclude that the legislature did not intend to limit the protections of the Act solely to a highway, street or bridge which is totally closed, or which is opened only to one lane two-way traffic. In my opinion, the Act is applicable to the instant case, a single lane closure on a multilane highway. The trial court therefore erred in granting summary judgment to the defendants on counts III and IV. Accordingly, I dissent.